[S. F. No. 2298. In Bank.—October 16, 1903.]

## PETERSON BROS., Appellant, v. MINERAL KING FRUIT COMPANY, Respondent.

SALE OF PRUNES—ACTION FOR BREACH OF CONTRACT—COUNTERCLAIM —SPECIAL DEMURRER—TRIAL UPON MERITS.—In an action for breach of a contract for the sale of prunes, where the answer demurs and sets up an alleged counterclaim, or cross-complaint, for loss on resale of the prunes, after refusal of plaintiffs to receive them, to which a special demurrer for ambiguity and uncertainty was interposed and overruled, such ruling is without prejudice

where the cause was fully tried upon the merits, and whatever of ambiguity or uncertainty appeared in defendant's pleading was cleared up by the evidence, and plaintiffs were not misled in respect of the alleged ambiguity.

ID.—FINDINGS—TENDER—GROUND OF REFUSAL—WAIVER—IMMATERIAL FINDING.—Where, in such action the court found a tender of prunes of the quality and grades in accordance with the contract, which plaintiffs refused to accept, solely on the ground that the prunes were not sound and merchantable, and of choice quality of Visalia prunes properly cured, and that all other objections were waived, a finding on the question whether the goods were graded from five to seven point, as provided in the contract, was immaterial, and the refusal to accept them was a waiver of such finding.

ID.—REFUSAL TO RECEIVE FRUIT AT WAREHOUSE—DELIVERY.—A refusal of the plaintiffs to receive the fruit at their warehouse was a refusal to receive a delivery at the town specified in the contract.

ID.—SACKING OF PRUNES—FINDING OF EXPRESS WAIVER—SUFFICIENCY OF DENIAL—REFUSAL OF PRUNES IN BULK.—Where the court found an express waiver of the provision of the contract as to the sacking of the prunes, and the denial in the answer was sufficiently specific in view of such finding, and the plaintiffs refused to receive the prunes after examining them in bulk, the provision of the contract as to such sacking was immaterial.

ID.—EVIDENCE—DECLARATIONS OF DEFENDANT'S AGENT.—The declarations of an agent of the defendant employed to superintend the preparation of the prunes for sale, but not shown to have any authority connected with the sale of the prunes or to have been an agent in the transaction of their purchase by the plaintiffs, are not admissible against the defendant to show that the prunes sold were not merchantable, if not introduced to impeach the evidence of the agent on cross-examination.

ID.—DECLARATIONS BY MEMBER OF FIRM—IMMATERIAL RULING AS TO AGENT'S OPINION.—Declarations made by one of the firm of plaintiffs, that if the market had not gone down they would have taken the prunes, are admissible against the firm; and where such declarations were proved without objection, the admission of the declaration or opinion of their purchasing agent to a similar effect, against objection and a refusal to strike it out, is without prejudice.

ID.—IMMATERIAL RULINGS UPON EVIDENCE.—Other specific rulings upon evidence examined and held to be immaterial, or without prejudice.

ID.—VALUE OF PRUNES NOT SHOWN—REPORT OF PACKER—FINDING NOT SUSTAINED.—The report of an expert packer of the defendant showing that he boxed the prunes in question, but not disclosing how many boxes of each grade were packed, is not admissible evidence of the value of the prunes sold, and where there is no other evidence of such value, a finding of the value thereof, necessary to support

CXL. Cal.—40

the counterclaim or cross-complaint of the defendant, cannot be sustained.

ID.—CORRESPONDENCE OF DEFENDANT WITH THIRD PERSONS—SUBPŒNA DUCES TECUM.—The court properly refused to allow a *subpœna duces tecum* to compel the production of correspondence of the defendant with third persons in reference to the prunes sold by defendant to the plaintiffs.

ID.—SUPPORT OF FINDINGS—CONFLICT OF EVIDENCE.—Where the evidence was substantially conflicting upon the question of the merchantable quality and condition of the prunes, and market value of different grades, the findings thereupon cannot be reviewed upon appeal.

ID.—FINDING OF NON-PAYMENT.—Where the plaintiffs did not allege nor claim payment for the prunes, they cannot object to a finding of non-payment, as not supported by the evidence. Proof of non-payment was not necessary to support such finding.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. G. Lorigan, Judge.

The facts are stated in the opinion.

J. R. Leppo, for Appellant.

Jackson Hatch, for Respondent.

CHIPMAN, C.—This appeal is from a judgment for defendant and from an order denying plaintiff's motion for a new trial. The suit was on a contract between the parties for the sale of the entire crop of dried prunes grown on defendant's ranch, near Visalia. Among other provisions of the contract were the following: "All fruit to be sound and merchantable and of choice quality of Visalia prunes, of the different grades, to be graded from five to seven point, both inclusive, and properly cured and sacked in white cotton sacks and delivered f. o. b. cars at Visalia, and accepted at warehouse by Peterson Bros. . . . All fruit must be taken and paid for by December 1, 1898, or accepted in the warehouse and paid for on estimated weight, to be corrected when moved." Indorsed on the contract is defendant's receipt for "$1,000 on the above contract, . . . to be deducted from the last lot of prunes delivered under the contract."

Plaintiff sues to recover the one thousand dollars advance payment on the contract alleging defendant's breach thereof,

and also for two hundred and thirty dollars damages, alleged to be caused plaintiff by way of expenses incurred under the alleged false representations of defendant that the prunes were ready for delivery.

The answer denies the alleged breach of the contract and sets up by way of cross-complaint, or as a counterclaim, a demand for the sum of $1,847.60, being the difference between the contract price of the prunes and the price for which defendant sold the fruit after plaintiff's refusal to accept the same on tender made.

The trial was by the court without a jury, and judgment passed for defendant for the amount claimed in the answer and counterclaim, less the one thousand dollars received by defendant.

There are numerous errors assigned in the record, many of which are not urged in appellant's brief. We will notice such as are insisted upon and seem of sufficient importance to invite comment.

1. A special demurrer to defendant's counterclaim, or cross-complaint, was interposed and overruled, and it is claimed that it should have been sustained. The cause was fully tried on its merits; whatever of ambiguity or uncertainty appeared in the cross-complaint, if any, was cleared up by the evidence, and the trial showed that plaintiff was not misled in respect of the particulars constituting the alleged ambiguity in the pleading.

2. It is claimed that the judgment is not sustained by the findings and the decision is against law. In support of this claim it is said: (*a*) That the court failed to find that the prunes were graded from five to seven point, and failed to find that they were graded at all; (*b*) That the contract provided for delivery at Visalia, and the cross-complaint alleged tender at the place provided for in the contract, but did not allege waiver of this condition, and hence defendant must prove and the court must find performance in order to support the judgment, and a finding of waiver was a finding on a fact not in issue; (*c*) Similarly, it is alleged in the complaint, that defendant "did not sack said crop in white cotton sacks," and as the finding is that this condition of the contract was waived, the finding does not support the judgment; that the answer does

not plead waiver of this condition (though the cross-complaint does) but "denies that on said occasion or any occasion it failed or refused to deliver to plaintiff said crop according to contract." In answer to these several objections it appears: (a) That the court found a tender of prunes of the quality and grades in accordance with the contract; it found that when the tender was made the plaintiff refused to accept the prunes, placing its refusal "upon the sole and only ground that the prunes were not sound and merchantable and of choice quality of Visalia prunes and properly cured; . . . and that all objections of every kind and character to the time, place, and manner of delivery of said prunes so tendered . . . were then and there waived by the plaintiff." In view of this finding, it was immaterial whether the prunes "were graded from five to seven point," and the refusal to accept them was a waiver of a finding of such immaterial fact; (b) So, also, may it be answered as to delivery at Visalia, for a refusal to receive the fruit at the warehouse was a refusal to receive it at Visalia or elsewhere; (c) In addition to the finding last above stated, the court found that "the provision of said contract that the said prunes should be sacked in white cotton sacks was expressly waived by plaintiff." We think the denial of the allegation as to sacking the fruit, while not specifically traversing the allegation, was yet sufficiently specific to take the case out of the rule enunciated in *Daly* v. *Russ,* 86 Cal. 114, and other cases cited by appellant, in view of the finding that this condition was waived by plaintiff. When plaintiff refused to receive the fruit, after examining it in bulk, the condition as to sacking became immaterial, and defendant was not called upon to sack the fruit and again tender it in order to comply with its contract. It does not necessarily follow that because defendant did not plead waiver in the answer that it admitted the allegation in question.

3. The point most strenuously urged as ground for reversal is, that the court refused to allow proof of the declarations touching the condition of the fruit when tendered, made by one Fleming, claimed by plaintiff to have been the agent of defendant at the time the fruit was inspected and refused by plaintiff. The agent of plaintiff (one Morelock) visited the warehouse and dry-yards of defendant for the purpose of

inspecting the fruit and ascertaining its quality and fitness for delivery, and Fleming was there in charge of defendant's business. His authority must be determined from what he testified as to his duties. He was called by plaintiff as its own witness for the purpose of laying the foundation for the admission of his declarations made during the course of the examination of the fruit by Morelock. He testified: "At that time I had charge of the ranch and the warehouse and the prunes in it. My employment was for the purpose of taking charge of the ranch and work it, gather the fruit and dry it and put it in the warehouse, and haul it to and from the orchard to the bins, and I attended to its grading and superintended that, and it was my judgment that was exercised in determining when the fruit should be ready to take from the trays in the process of drying, and I did attend to all these duties. I had absolute charge of the ranch and of the warehouse, and of the company's interests at that end of the state. In the latter part of November, when Mr. Morelock came there, I opened the door and told him there was the prunes. He had an order from Peterson Bros. to see the prunes. I showed them to him. I was there while he inspected and examined them." Thereupon Morelock resumed his testimony, and was asked to state the conversation he had with Fleming. The alleged admissions made by Fleming, as testified to by Morelock, went to the condition of the prunes and strongly corroborated Morelock's testimony, and, if he made them, were highly prejudicial to the case of Fleming's employer. If the questions had been put directly to Fleming on cross-examination for the purposes of impeachment, after he had testified to the quality of the prunes, they would have been clearly proper. But could plaintiff prove its case in this manner? Was Fleming such agent of his employer as would make his admissions binding upon it? Did his authority as superintendent of the business of curing and preparing the prunes for market include the authority to sell, or to make admissions to a purchaser that the prunes were not merchantable? We think these questions must be answered in the negative. Fleming's position was no different from that of the ordinary superintendent employed to superintend the manufacture of goods for his employer. It is not pretended that he was au-

thorized to sell or represent the employer in making sales. His duty was to prepare the goods for market and to manage the ranch generally, but he was neither the actual nor ostensible agent to speak for his employer in disposing of the goods. Appellant cites numerous authorities to the effect that "where the acts of the agent will bind the principal, there his representations, declarations, and admissions, respecting the subject-matter will also bind him, if made at the same time, and constituting a part of the *res gestæ*. They are in the nature of original evidence, and not of hearsay." Subdivision 5 of section 1870 of the Code of Civil Procedure is cited. But that provision is, that evidence may be given of the following facts: "After proof of . . . agency, the act or declaration of . . . the agent of the party, within the scope of the . . . agency, and during its existence." The Civil Code (sec. 2295) declares that "An agent is one who represents another, called the principal, in dealings with third persons." Unless Fleming was so connected with the sale of the prunes as to make him an agent in the transaction of their purchase by plaintiff, his admissions cannot bind his principal. (*Beasley* v. *San Jose Fruit Co.*, 92 Cal. 388.) We do not think that the evidence established such a relation to his employer. The error of appellant is in assuming that because Fleming was employed to superintend the preparation of the prunes for sale he was therefore the agent in the transaction of the sale.

4. Witness Hobson, president of defendant corporation, was testifying to what took place at Visalia between himself, as representing defendant, Mr. Henry, also interested in the company, and Mr. Meek, who was the purchasing agent of plaintiff, and whose duty it was to inspect and examine and receive fruit for it. This conversation related to the pending controversy concerning the prunes in question. The witness was asked if he remembered "at that time Mr. Meek saying that if the market had not gone down there would not have been any trouble about Mr. Peterson taking these prunes, or words to that effect." Counsel for plaintiff objected to the question "as incompetent, irrelevant, and immaterial, and hearsay, declarations of a party not in authority to make any such statements, even though they were made."

Referring to this same interview, Meek had previously, when

called by plaintiff as its witness and on cross-examination, testified: "I did n't state that if the market had not gone down there would not have been any trouble about accepting the prunes." In reply to the question, witness Hobson said: "I remember that statement. I think a little different from that. I think Mr. Meek made this, as I remember, the statement was simply it was in his opinion that if the market had not been a lowering market, but had been a raising market, that if the market was stiff that those prunes would have gone through all right. We can put through other stuff on a raising market that might be turned down in a falling market. *Mr. Leppo* (attorney for plaintiff).—We move to strike that out on the ground it is in his opinion." The court denied the motion and plaintiff excepted. Appellant urges this ruling as error.

Substantially the same statement was made by Mr. Peterson, one of the plaintiffs, to superintendent Fleming, as Fleming testified, when the former was inspecting the prunes: "that if the market had remained all right, they would have gotten rid of these prunes all right." On cross-examination he was asked: "Q. Do you mean to say that Mr. Peterson told you at that time that if the market had not depreciated, he would have taken those prunes?—A. That is what he meant'; that is the way I understood it." No objection was made to this evidence, and indeed none could be made, as it was the admission of one of the plaintiffs and was admissible against the firm. Error may be conceded as to Meek's admission, and the fact remains proved. The ruling was therefore not prejudicial.

5. A large number of other errors are assigned in admitting and excluding testimony. We will notice such only as seem to be most relied on by appellant.

(a) Henry Cahen was an expert witness for plaintiff, and testified that the prunes were of inferior quality and not merchantable; when defendant offered the prunes for sale after rejection by plaintiff, witness visited San Jose as an intending purchaser in the interest of plaintiff and made written offers for the prunes. His subsequent connection with the sale of the prunes bore upon his opinion as to the quality and to some extent upon the credibility of his statement in chief as to

values.   We see no prejudicial error in the cross-examination.

(*b*) Witness Henry testified that plaintiff waived the sacking of the fruit.   On cross-examination plaintiff asked him "the value of the sacks required to sack this lot of prunes in accordance with the requirements of the contract."   The court sustained an objection.   The question had no relevancy in view of the waiver, and refusal to accept the fruit, whether sacked or not.

(*c*) Plaintiff in its complaint demanded two hundred and thirty dollars damages for moneys expended in examining the fruit upon the false representations that it was ready for delivery, and to prove the allegation offered evidence which was refused.   In view of the finding that the fruit was sound and merchantable this issue becomes immaterial.

(*d*) Witness Peterson had testified to the quality and condition of the fruit, but not as to prices.   The court permitted defendant to cross-examine him as to his knowledge of prices on the ground that it tended to show the interest of the witness.   The ruling was error, but not prejudicial.

(*e*) The testimony of George Fleming as to the condition of the prunes after they had been handled and boxed, and about two months after they were rejected, was not competent to prove their condition when tendered and rejected, and it was error to admit the testimony.   The court remarked that the objection went more to the weight of the testimony than to its admissibility.   The evidence as to the condition of the fruit at the time of tender was so full, and from so many witnesses, that we think it sufficiently appears that the court was not influenced to plaintiff's injury by the evidence now being considered.

(*f*) In view of the allegations of the cross-complaint, we think the value of the fruit on December 10, 1898, was a proper subject of inquiry.   (Civ. Code, sec. 3353.)

6. Witness Geo. H. Fleming, an expert grower and packer of prunes, was employed by defendant to process and box the fruit for market,   He testified that he performed this work, putting all the fruit in twenty-five-pound boxes, and according to the several grades,—i. e. the 40-50's, 50-60's, and so on,—in separate boxes; that the prunes had a market value according

to the sizes.  He was shown a paper which he identified as a report written by him and addressed to defendant, and on its face it purports to give the result of his packing.  It showed the number of boxes of twenty-five pounds each, of each grade from 40-50's, 50-60's (i. e. prunes running 45 to 47 or 55 to 57 to the pound), up to 110-120; average number of prunes to the pound of each grade; total number of boxes and total weight of all boxes after packing and weight before dipping, showing a gain of 7,770 pounds, and some other facts not important.  This report furnished the only evidence by which the court could arrive at the value of the prunes, and hence the only means it had to determine the difference between the contract price and the market price, which it found to be $1,847.60.  After deducting one thousand dollars paid on the contract, the court gave defendant judgment for $847.60.  The evidence objected to was material, and unless properly admitted the finding of the court is not supported.  I cannot find in Fleming's testimony any statement that the report correctly represents the number of boxes of each grade, and this is an essential fact in arriving at values.  He testified that he properly graded and boxed the fruit, but this is not a statement that the paper in question is a correct record of what he did in the particulars stated in it; and it was not offered in evidence in connection with Fleming's testimony in aid of his memory or at all, but was offered later on in the trial, while Mr. Henry, a member of the company, was testifying, but without any further proof of its correctness.  The paper was therefore improperly admitted, and was prejudicial error.

7. While witness Hobson was testifying it appeared that certain letters had been written by the company to persons in the east, and replies received from them in reference to these prunes.  Plaintiff called for a *subpœna duces tecum* directing the witness to bring into court all such correspondence.  The request was, we think, properly denied.

8. It is urged that the evidence is insufficient to support the findings.  Upon the question of the merchantable quality, the condition of the prunes, and the market value of the different grades, the evidence is irreconcilably in conflict, and on these matters the findings cannot be reviewed.  As to the objection that the finding of non-payment is not supported, the

pleadings and testimony do not admit of the objection now by plaintiff. It did not allege payment and does not now claim payment. It relies wholly on failure to prove non-payment. Such proof was not necessary. (*Hurley* v. *Ryan,* 137 Cal. 461.) The evidence was insufficient to support the amount of damages found by the court in the single particular pointed out. The claim of the plaintiff that it rescinded the contract is not supported; on the contrary, the evidence supports the finding that the contract was not rescinded.

As there is no error in the record except the finding relating to the single question of the amount of damages, we can see no reason for a retrial of the entire case.

It is recommended that the judgment and order be reversed and the cause remanded for a new trial upon the evidence heretofore submitted, and upon such further evidence on the issue of damages alone as either party may desire to submit.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded for a new trial upon the evidence heretofore submitted, and upon such further evidence on the issue of damages alone as either party may desire to submit.

McFarland, J., Angellotti, J., Van Dyke, J.

SHAW, J., concurring.—I concur in the judgment of reversal. I do not agree to the statement that the admission of the report of Fleming, referred to in the sixth paragraph of the main opinion, was error. Fleming had testified that the report was made to his superiors in the usual course of his business, and that it contained a correct statement of the total number of pounds of prunes which came into his possession. The report was therefore admissible as a memorandum made at the time of the transaction and in the usual course of business, to show the total quantity of the prunes in question, and the general objection that the report, as a whole, was incompetent, irrelevant, and immaterial, which was the only objection made, was not well taken.

But it was not competent evidence of any other fact, for there was no proof that it was correct in any other respect.

In order to determine the amount of damages it was necessary to know the number of pounds of prunes of each of the different grades. There was no evidence of this except that contained in the report, and that was not evidence which could be used for that purpose. The finding as to the amount of damage depended on the calculation to be made from the data furnished by the report, and as it must be excluded for that purpose, it follows that this finding is not sustained by the evidence, and the judgment must be reversed for that reason.

I do not concur in criticisms made in the main opinion with respect to the other rulings of the court.

Henshaw, J., concurred with Mr. Justice Shaw.

Rehearing denied.