[Civ. No. 1270.   First Appellate District.—April 7, 1914.]

## SUSANA E. YOUNG, Respondent, v. FRESNO FLUME AND IRRIGATION COMPANY (a Corporation), Appellant.

Wrongful Death—Action by Parent for Damages—Pleading.—A parent is entitled, under a general allegation of damages, to recover for the loss of service and the deprivation of the comfort, protection and society of his child caused by its death, such damages as under all the circumstances of the case may be just.

Id.—Negligence in Blasting—Sufficiency of Evidence to Show.—In this action by a parent to recover damages for the death of her minor son the evidence sufficiently shows that the foreman of the defendant's blasting crew was guilty of gross carelessness at the time of discharging the blasts by which the decedent was fatally injured.

Id.—Action for Wrongful Death—Issues and Verdict.—Where an action for wrongful death is tried and submitted to the jury upon all the issues tendered by three counts in the complaint, a verdict sustainable on either or both of the first and third counts will not be reversed because of failure of proof to sustain the second count.

Id.—Fellow-servants—Who are—Members of Different Crews at Lumber Mill.—Where a corporation engaged in lumbering employs three crews of men, each working under its own foreman, and each independently of the other, but each doing its allotted part of the general work of chute construction, the foremen and the members of the several crews are fellow-servants.

Id.—Competency of Foreman—Evidence as to His Character or Reputation for Carelessness.—In an action for the death of the engineer of one of such crews through the negligence of the foreman of one of the other crews engaged in blasting, evidence of the general reputation of such foreman as to carelessness in blasting, to show negligence on the part of the employer in retaining him, is not admissible in the absence of prior proof of specific acts of past carelessness.

Id.—Character as Distinguished from Reputation—Proof of Specific Acts.—In such case it is the character, not the reputation of the employee, which is the primary subject of consideration, and in the absence of proof of specific acts of carelessness, sufficient to establish his character in respect to negligence, evidence of his reputation in that respect is inadmissible.

Id. — Reason for Rule of Evidence — Incompetency of Fellow-Servant.—The reason for this rule is that the employee causing the injury and the person injured, being fellow-servants, the employer would not under the law as it was prior to 1907, when the injury occurred, be liable, unless it should be shown that the employer was negligent in retaining the careless and culpable employee in its service after it knew or should have known of his incompetency. In order to make this proof two things were necessary to be shown: 1. That the culpable employee was in fact incompetent by reason of his habitual carelessness; and, 2. That the defendant knew or should have known of such incompetency prior to the injury complained of, and with this actual or imputed knowledge negligently retained the careless servant in its employ.

Id.—Proof of Reputation—Purpose and Admissibility of Evidence. The proof as to reputation could be admissible only for the purpose of imputing to the defendant knowledge of a fact which had become a matter of general repute, and hence could not be legally admitted until the foundation had been laid in proof of past acts of carelessness, which would in itself be sufficient to predicate a finding of the fact of incompetency upon; nor could the evidence of his reputation be admissible to prove the fact of incompetency; otherwise a defendant might be held responsible for its failure or refusal to discharge a perfectly competent but otherwise unpopular employee.

Id.—Discharge of Foreman—Evidence Concerning Statement of Superintendent.—In such action it is error to admit in evidence the statement of the general foreman of the defendant, accompanying the discharge of the foreman of the blasting crew on the day after the accident, to the effect that the injury was due to the latter's negligence.

APPEAL from a judgment of the Superior Court of Fresno County.   George E. Church, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, and Bernard Silverstein, for Appellant.

G. W. Cartwright, and J. O. Traber, for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of plaintiff and against the defendant for the sum of three thousand dollars, damages claimed to have been suffered by the plaintiff through the death of her son, a minor of the

age of eighteen years, caused by the alleged negligence of the defendant.

The following are the facts of the case: The defendant is a corporation, and was at the time of the accident which caused the death of the youth, engaged in the lumber business, owning a sawmill and conducting logging operations at or in the vicinity of a place known as Damon Mill, in the county of Fresno. In connection with these activities the defendant was, during the month of April, 1903, occupied in constructing a chute for conveying logs along the mountain side to its mill, and had employed in this particular work three gangs of men doing separate details of the work, each embracing several workmen under their own foreman, and all under a general foreman named William McLeod, who was one of several general foremen in the diversified activities of the defendant, and these in their turn were under a Mr. Fitzpatrick, who was known as the woods superintendent, while above the latter was a Mr. Swift, who was assistant manager under the general manager and president of the corporation, Mr. Shaver.

The decedent went to work for the defendant at the scene of these activities on April 29, 1903, being engaged as an engineer to operate a donkey engine, as a member of what was known as the donkey crew, along the line of the proposed chute, and under a crew foreman named Than Riggan. The donkey engine was being operated about a mile and a quarter from the mill, to which a trail ran along the line of the proposed chute, which the workmen used in going to and fro. On the afternoon of April 30th another crew, known as the blasting crew, under a foreman named Barney Lynch, moved over from some other point on the defendant's property some distance away, to the line of the proposed chute, at a point in proximity to said trail and about 225 yards away from the station of the donkey engine but invisible from its location. This blasting crew made preparations to set off several blasts at this point during that afternoon, and were ready to do so between 5 and 6 o'clock after the men of other crews had quit their places of work for the day. The foreman of the blasting crew saw several men, including the foreman of the donkey crew, pass along the trail shortly after 5:30 o'clock that evening and supposed that all of the men of that crew had gone by. He then set off the blasts. There is some dispute in the evi-

dence as to whether the blasting crew called out "fire" loudly or at all just before the blasts went off; but there is no evidence that any member of that crew, or any one else in fact, went back along and up the trail to warn possible comers of the impending blasts. The evidence shows that the deceased had lingered at his engine for a few moments after the other men had left in order to make some slight repairs, and that this fact was known to his foreman, who did not, however, have time to impart this knowledge to the blasting crew when he reached the place where the blasts were about to be exploded, but had to run down the trail to save his own life. The evidence further shows that the deceased came along the trail at the moment of the explosion, and was evidently struck and fatally wounded by the flying rocks. He was found the next morning lying a few feet from the place of one of the blasts in an unconscious and dying condition, and he died that day without regaining consciousness. There was no evidence before the court at the trial tending in any degree to show that the deceased knew or should have known of the presence of the blasting crew at the place where he met his death, or that he had any warning of the impending explosion.

The first contention of the appellant is that the complaint does not state facts sufficient to constitute a cause of action, for the reason that there is no allegation showing wherein the plaintiff was damaged by reason of the death of her minor son. No authority is cited in support of this contention. It has long been the settled law of this state that a parent is entitled, under a general allegation of damages, to recover, for the loss of service and the deprivation of the comfort, protection, and society of the child caused by its death, such damages as under all the circumstances of the case may be just. (Code Civ. Proc., secs. 376, 377; *Nehrbas* v. *Central Pacific R. R. Co.*, 62 Cal. 320; *Bond* v. *United Railroads*, 159 Cal. 270, 286, [Ann. Cas. 1912C, 50, 113 Pac. 366]; *Peters* v. *Southern Pacific Co.*, 160 Cal. 48, 70, [116 Pac. 400].)

The complaint in this action contains three counts. The first count alleges in substance that the deceased came to his death from the careless and negligent acts of the defendant in discharging certain powerful and dangerous dynamite placed without notice or warning to the decedent, and while

24 Cal. App.—19

he was passing the point of location of such blasts while going from his work along the trail which the defendant had provided for its employees.  The second count avers that the accident complained of was caused through the negligence of the defendant in failing to adopt, promulgate, and use reasonable diligence to enforce proper and sufficient rules for the protection of the employees of the defendant from the dangers due to the use of dynamite and to blasting in the conduct of its business.  The third count of the complaint alleges that the accident was caused by the negligence of the foreman of the blasting crew, and to the fact that the defendant, in addition to being responsible for his alleged direct acts of negligence, was itself guilty of negligence in retaining in its employ the said foreman of the blasting crew when it knew, or in the exercise of reasonable diligence should have known, that he was habitually careless, negligent, incompetent, and unfit to perform the dangerous and delicate work and duty of his position.

The cause was tried upon all of the issues tendered by these three counts in the complaint. Counsel for the appellant urges that, as to the second count of the complaint, there could be no recovery, for the reason that the evidence offered by the plaintiff affirmatively shows that a reasonable rule respecting the warning to be given before setting off blasts had been adopted and promulgated by the defendant.  Apart from the question, determinable only by the jury, as to whether the orders given by the general foreman, William McLeod, to Barney Lynch, the foreman of the blasting crew, ''to send one man down the chute to holler 'fire' before spitting the fuse, so that everybody could get out of the way,'' was a reasonable or sufficient precaution when setting off dangerous blasts, it is sufficient to note that no motion for a nonsuit was directed to the insufficiency of the evidence to sustain this particular count; and that since the case was submitted to the jury upon all three counts, if its verdict is sustainable upon both or either of the other counts, it would not be reversed because of any failure of proof to sustain the second count.

The main contentions of the appellant turn upon the issues presented by the first and third counts of the complaint, and raise the following questions for solution upon this appeal:

First, Was Barney Lynch, the foreman of the blasting crew, negligent in failing to give proper, timely, and adequate warning of the impending blasts, by the discharge of which the deceased came to his death? Second, Was the said Barney Lynch, if so negligent, the fellow-servant of the deceased, for whose negligence the plaintiff cannot recover in this action? Third, Was the defendant shown to have been negligent in employing or retaining in its employment the said Barney Lynch when he was habitually careless with respect to the use of proper precautions before discharging blasts, and when that fact was or should have been known to it prior to the fatality involved in this case?

To the first of these questions it will be sufficient to say that without serious conflict the evidence quite sufficiently shows that Barney Lynch, the foreman of the defendant's blasting crew, was guilty of gross carelessness at the time of discharging the blasts by which decedent was fatally injured. Even assuming that the foregoing rule with respect to the warning to be given before a blast was reasonably adequate for safety to the other employees of the defendant or to passers-by, it was a rule which was not complied with in the case under review. No man was sent either up or down the trail to warn comers of impending danger; and the cry of "fire," just before the blast, was palpably insufficient to notify any but those already aware of the impending explosion. Nor can it be urged in this connection that Than Riggan, the immediate foreman of the deceased as a member of the donkey crew, was negligent, for the proofs show that he only learned of the presence and impendency of these blasts a moment before their explosion, and when to notify the blasting crew would be futile, and to retrace his steps and warn the deceased impossible, because the fuses were smoking, and he was obliged to immediately flee down the trail to save his own life.

The next and legal question presented is whether Barney Lynch, the foreman of the blasting crew, was a fellow-servant of the deceased in a sense which would forestall a recovery for damages for his death. The fatality in question occurred prior to the passage of recent statutes changing the former rule with reference to responsibility for the acts of fellow-servants. The defendant, in connection with its other activities, was at the time of the accident engaged in constructing

a chute for the movement of logs from the woods to the mill. In the prosecution of this work three crews of men were engaged, the donkey crew, the jerry crew, and the blasting crew, each working under its own foreman, and each independently of the other, but each doing its allotted part of the general work of chute construction. It would seem to be settled beyond question by the decisions of this state construing the law as it stood prior to the passage of the statute of 1907, [Stats. 1907, p. 119], that the foreman and members of these several crews were fellow-servants employed by the same employer in the same general business. (Civ. Code, sec. 1970; *Hogan v. Central Pacific R. R. Co.,* 49 Cal. 128; *McLean* v. *Blue Point G. M. Co.,* 51 Cal. 255; *Fagundes* v. *Central Pacific R. R. Co.,* 79 Cal. 97, [3 L. R. A. 824, 21 Pac. 439]; *Schwind* v. *Floristan P. & P. Co.,* 5 Cal. App. 197, [89 Pac. 1066]; *Vestner* v. *Northern Cal. P. Co.,* 158 Cal. 284, [110 Pac. 918].) The cases from other jurisdictions cited by counsel for the respondent have no persuasive force against the foregoing authorities from our own state on this subject. It follows that since Barney Lynch must be held to have been the fellow-servant of the deceased, the plaintiff would not be entitled to recover for the detriment caused by his negligence, unless it should also appear that the defendant was negligent in the employment or retention of Barney Lynch as foreman of the blasting crew. It is in relation to this feature of the case that the main difficulties arise, or rather, arose, at the trial. Early in its course the plaintiff produced the witness Than Riggan, of whom this question was asked: "Do you know what Barney Lynch's general reputation as to carelessness or carefulness in the discharge of his duties on the blasting crew was prior to the accident?" This question, over the objection of the defendant, the court permitted the witness to answer, and he testified: "It was bad in camp." Substantially the same question was at intervals during the trial repeated to several other witnesses, and allowed to be answered similarly over the objection of the defendant. The specific objection which the defendant urged and repeated to these several questions and answers was that evidence of the general reputation of Barney Lynch about the camp for negligence in giving warning of the explosion of blasts was incompetent and inadmissible to bind the defendant until the foundation therefor had been laid by proof of actual

carelessness upon former occasions in exploding blasts. The
evidence as to reputation was admitted by the court uncondi-
tionally and without requiring such proof, though later in
the case some slight evidence was introduced tending to show
that Lynch had been careless upon one former occasion. The
testimony of the former foreman, William McLeod, when
analyzed in the light of his evident hostility to the defend-
ant, goes no further than this, while the evidence of the former
fellow-workmen with Barney Lynch giving him a bad repu-
tation, is supported by no basis of facts or detail as to prior
negligent acts. This evidence was not in itself sufficient to
base opinions as to Barney Lynch's bad reputation for
habitual carelessness upon, and we are thus brought face to
face with the question of the admissibility of evidence of
the reputation of Barney Lynch for carelessness in blasting
in the absence of a sufficient showing as to his past careless-
ness in fact. The leading California case upon this point
is the case of *Gier* v. *Los Angeles C. E. Ry. Co.*, 108 Cal. 129,
[41 Pac. 22], wherein it is very clearly pointed out that in
cases involving the precise question in issue here it is the
character and not the reputation of the employee which is
the primary subject of consideration, and that in the absence
of proof of specific acts of carelessness, sufficient to establish
the character of the servant in respect to negligence, evidence
of his reputation in that respect is inadmissible. The reason
for this rule is that the employee causing the injury and the
person injured being fellow-servants, the employer would not,
under the law as it was at the time of the injury in question,
be liable, unless it should be shown that the employer was
negligent in retaining the careless and culpable employee in
its service after it knew or should have known of his incom-
petency. In order to make this proof two things were
necessary to be shown: 1. That the culpable employee was in
fact incompetent by reason of his habitual carelessness; and,
2. That the defendant knew or should have known of such
incompetency prior to the injury complained of, and with
this actual or imputed knowledge negligently retained the
careless servant in its employ. The proof as to reputation
could only be admissible for the purpose of imputing to the
defendant knowledge of a fact which had become a matter
of general repute, and hence could not be legally admitted

until the foundation had been laid in proof of past acts of carelessness, which would in itself be sufficient to predicate a finding of the fact of incompetency upon; nor could the evidence of his reputation be admissible to prove the fact of incompetency; otherwise a defendant might be held responsible for its failure or refusal to discharge a perfectly competent but otherwise unpopular servant. It would thus seem to be clear both by reason and precedent, that the court committed error in the admission of the testimony as to the previous reputation of Barney Lynch for carelessness in the absence of a sufficient showing of the fact of his prior incompetency. (*Gier* v. *Los Angeles C. E. Ry. Co.,* 108 Cal. 129, [41 Pac. 22]; *Consolidated Coal Co.* v. *Seniger,* 179 Ill. 370, [53 N. E. 733]; *Park* v. *New York C. & C. Co.,* 155 N. Y. 215, [63 Am. St. Rep. 663, 49 N. E. 674]; *Youngs* v. *New York O. & W. Co.,* 154 N. Y. 764, [49 N. E. 1106].)

The appellant further contends that the court erred in the admission of testimony as to the discharge of Barney Lynch after the explosion in which the decedent lost his life. The respondent justifies the offer and admissibility of this evidence upon the ground that it tended to prove that William McLeod, the general foreman of the several crews engaged in building the chute along the line in which the accident occurred, stood in relation of vice-principal of the defendant. It has been held that the power to employ and discharge the employees of a corporation may be shown in evidence as tending to mark the line of distinction between a vice-principal, for whose negligence a corporation is responsible, and an ordinary employee and fellow-servant of another, for whose negligence the principal is not to be held liable; and it has also been held that evidence of the exercise of the power of hiring and discharging employees furnishes some evidence of its delegation by the principal to the foreman or official actually exercising it. The particular vice of the ruling of the trial court in this respect did not so much consist in admitting the evidence of the discharge of Barney Lynch by the foreman, William McLeod, on the morning after the explosion, as it did in also allowing to be introduced in proof, over the defendant's objection, the conversation which accompanied the discharge. The record discloses that on the morning following the explosion and shortly after the body

of the dying youth had been borne into camp, the foreman, William McLeod, said to Barney Lynch, "This is some of your work. Get your things together and get out of here." (Tr., fol. 212.) The unmistakable implication of these words is that the injury to the decedent had been caused by the negligence of Lynch, and that for that reason he was being discharged. That this conclusion of the general foreman of the defendant, even assuming that he stood in the relation of vice-principal to it, is one by which the defendant could not be bound, and was therefore improperly admitted in evidence, is well settled in this state. (*Beasley* v. *San Jose F. P. Co.,* 92 Cal. 388, [28 Pac. 485] ; *Borland* v. *Nevada Bank,* 99 Cal. 89; [37 Am. St. Rep. 32, 33 Pac. 737] ; *Lissak* v. *Crocker Est. Co.,* 119 Cal. 442, [51 Pac. 688] ; *Crawford* v. *Transatlantic Fire Ins. Co.,* 125 Cal. 609, [58 Pac. 177] ; *Peterson* v. *Mineral K. F. Co.,* 140 Cal. 624, [74 Pac. 162] ; *Waldeck* v. *Pacific Coast S. S. Co.,* 2 Cal. App. 167, [83 Pac. 158].)

There are a number of other errors alleged to have been committed during the trial and which are discussed in the briefs of counsel, but they are all practically covered by the review of the trial thus far undertaken, and hence need not be considered in detail.

We think that for the reasons heretofore given the judgment must be reversed, and it is so ordered.

Lennon, P. J., and Kerrigan, J., concurred.