[Civ. No. 3009. First Appellate District, Division One.—October 29, 1919.]

KATE A. UMSTEAD et al., etc., Respondents, v. AUTO-MOBILE FUNDING COMPANY OF AMERICA (a Corporation), Appellant.

[1] CONTRACTS—RESCISSION OF CONDITIONAL SALE—MISREPRESENTATIONS —CONFLICTING EVIDENCE—FINDING—APPEAL.—Where in an action to rescind a lease and conditional sale of an automobile, and to recover payments made, on the ground that the automobile was not new, as represented prior to the making of the contract, the evidence is conflicting, the credibility of the witnesses and the weight to be given their testimony being a matter resting in the discretion of the trial judge, the finding of the trial court is conclusive on appeal.

[2] ID.—REPRESENTATIONS BY UNAUTHORIZED PERSONS.—In such action it is reversible error to admit testimony relative to the statements as to the condition of the car made by persons not shown to be the agents of the defendant.

[3] ID.—WHAT REPRESENTATIONS BINDING ON PRINCIPAL.—Only those representations, declarations and admissions of an agent, respecting the subject matter of a transaction, will bind the principal which are made at the same time and constitute a part of the *res gestae.*

[4] ID.—WHEN UNAUTHORIZED DECLARATIONS ADMISSIBLE.—The unauthorized declarations or admissions of an agent, not made contemporaneously with the occurrence, or transaction to which they relate, are not competent evidence against the principal, unless they are so immediately connected with the transaction as to constitute a part thereof.

APPEAL from a judgment of the Superior Court of Los Angeles County.  C. A. Raker, Judge.  Reversed.

The facts are stated in the opinion of the court.

Leon R. Yankwich for Appellant.

G. P. Adams for Respondents.

WASTE, P. J.—Plaintiffs instituted this action to rescind a lease and conditional sale of an automobile, and to recover payments made, on the ground that the automobile was not new, as represented prior to the making of the contract. The real parties plaintiff are Kate A. Umstead and Edith G. Lawrence, sisters, their husbands also being made parties. Cousins and Lawrence (the latter not related to plaintiffs), partners, operating under the name of Chevrolet Motor Car Company of Los Angeles, were dealers in automobiles. Defendant is a corporation engaged in the purchasing of cars and trucks from dealers who have already found a buyer, and in turn leasing them to the purchasers on terms; in other words, as we view it, reselling them on credit. The lower court rendered judgment in favor of plaintiffs. Defendant made a motion for a new trial, which was denied, and defendant appeals.

Plaintiffs Kate A. Umstead and Edith G. Lawrence were desirous of purchasing a new automobile, and made several trips to the place of business of Cousins and Lawrence to inspect automobiles and have the same demonstrated. They finally decided to buy, and claim that they selected one of two cars on the floor of the salesrooms. At the trial, it was admitted as a fact that this automobile was represented to them by the Chevrolet people to be a new car. Plaintiffs did not have sufficient ready money to pay the entire purchase price of the car and proposed a sale on the installment plan. Cousins and Lawrence, not being able to sell a car on credit, volunteered to get a company handling such transactions to buy the car, and in turn resell it to plaintiffs on satisfactory terms. They prepared, and the plaintiffs Mrs. Umstead and Mrs. Lawrence signed, an application in writing, addressed to the defendant, in which, after stating, "We desire to purchase from Chevrolet Motor Car

Company of California, one new five-passenger touring motor-car, season of 1914, model Baby Grand, with catalogue equipment,'' etc., the price is quoted, and the application continues, ''we hereby propose that if you will purchase the same (securing and keeping for yourself such discount for cash as you may be able to obtain) we will and do hereby bind myself to execute and deliver unto you an agreement in words and figures set forth in the draft thereof hereto attached and made a part hereof.'' This application was presented to, and accepted in writing by, the defendant. Whether the lease was actually attached to the application does not fully appear.

On information and data, secured from Cousins and Lawrence, Buckingham, the vice-president of defendant, prepared an agreement denominated a ''lease and conditional sale of automobile'' and the promissory notes secured by it, and gave them to Cousins and Lawrence, with instructions to have them properly signed by plaintiffs and returned. The principal document was a lease by and between the defendant and the plaintiffs, on terms therein specified, for the period of seven months, with the right to purchase after expiration of that time, and receive a bill of sale, of ''One (1) 1914: Baby Grand Chevrolet touring car; standard equipment; car number 5392,'' together with its equipment.

At the time the application was accepted by defendant, Cousins and Lawrence entered into an agreement with it, in which, in consideration of defendant accepting the same, they recommended the applicants (plaintiffs) as persons worthy of credit, and agreed to assume the entire fulfillment of the manufacturer's guarantee covering the car, and also agreed that in case of nonpayment on the part of the applicants they would co-operate with defendant to secure payment, or in case a recovery of the car proved necessary, they further agreed to co-operate with defendant in such recovery, and to store and sell such recovered car under defendant's direction, and at a compensation mutually agreed upon.

Before executing the lease on the part of defendant, Buckingham, its vice-president, personally examined the car bearing the number, and answering the description as inserted by him in the lease, and certified to his company that it was a new car. When cross-examined in court, dur-

ing the trial of this action, he testified that he could not tell from the investigation he had made whether it was a new car or not; that he had the statement of Cousins and Lawrence as to what car it was and checked up that certain car.

When the papers were all signed, defendant paid the Chevrolet Motor Car Company for the automobile, received from it a bill of sale thereof, and the automobile was placed in possession of the plaintiffs.

According to the testimony of, and in behalf of, plaintiffs, they had trouble in operating the car from the start, alleged weakness of parts and serious mechanical defects soon manifesting themselves. Disagreements arose between plaintiffs and the motor company over the amount and payment of repair bills. After keeping and using the car for three months, and driving it until the speedometer registered about five thousand miles, plaintiffs, according to their pleadings and testimony, for the first time learned that the automobile which had been delivered to them was not new, but was second hand, and had been used by the Chevrolet Motor Car Company, before its sale to them, as a demonstrating car. They thereupon refused to pay any further installments upon their contract, and gave notice to the defendant, in writing that they had elected to rescind their contract with it. They made demand for cancellation of the lease and repayment of the amounts paid thereunder, together with items for repairs and insurance. Defendants thereupon took possession of the car, which, according to the testimony, was in very bad shape. The rear "axle was broken, the motor was loose all over—it needed a general tightening up and overhauling."

The court found that as an inducement to plaintiffs Umstead and Lawrence to enter into the contract, the defendant represented and stated falsely, fraudulently, and deceitfully to the plaintiffs, and thereby induced them to believe, and the plaintiffs did believe, that the automobile was new and had not been used, when, as a matter of fact, it had been used, and was not new. The first part of this finding is based on the admission that Cousins and Lawrence represented the automobile to be new. No one else made the statements. To further support that portion of the finding it was necessary for the trial court to conclude that Cousins

and Lawrence were the agents of the defendant. Appellant contends, first, that there is not competent evidence to sustain the finding that the automobile delivered was not a new car. On this point, plaintiff Kate Umstead testified that in a conversation just prior to the rescission of the contract, and about three months after the lease was signed, Cousins and Lawrence "acknowledged that it was not a new car; that they stated that the car was a demonstrator." Plaintiff Nathan Lawrence testified that in one of the conversations prior to this litigation the following occurred between Mrs. Lawrence and Cousins: "Mrs. Lawrence made this statement at the time: 'Now, Mr. Cousins, you have had your say, and so forth, and what you would do, and would not do.' That is not the exact words, but that is the substance. 'Now,' she says, 'I have something to say to you, this is your demonstrator car, and you know it,' and he [Cousins] said: 'Yes, Mrs. Lawrence, that is our demonstrator.' " He further testified that "Mr. Lawrence [of the Chevrolet Company] said they had used their judgment, as we were going to make that long trip, and if we had a new car we would not have got through the Newhall tunnel; that they would have had to come and tow us back. That was the Visalia trip." The same witness testified: "We rode in that car practically thirty days, up Canteere Hill, when the demonstration was made, before we bought the car." Mrs. Blake, a witness for the plaintiff, testified that Mrs. Lawrence, one of the plaintiffs, said to Cousins: "I know this is not a new car, and you sold us a demonstrator," and Mr. Cousins said: "Well, Mrs. Lawrence, that is so." Witness Blake, an automobile mechanic, who appears to have done considerable work on the car while plaintiffs had it in their possession, testified that Cousins and Lawrence said to plaintiffs, because of the fact that the plaintiffs were going on a long trip, they, "in using their best judgment, had decided that it was advisable to give them a slightly used car." There was also evidence to the effect that the speedometer of the car registered one thousand seven hundred miles after its return from a trip after plaintiffs obtained it. Just which trip and what the mileage of these trips was does not appear.

Cousins and Lawrence both emphatically denied that they admitted that the automobile was a demonstration car. In

explanation of the statements credited to them by the other witnesses, they both testified that the car sold and delivered to plaintiffs was a new car, one of two new ones which they had received in their consignment for the month, and which they had in their salesroom; that they had no demonstrating car, but took the plaintiffs out in one of the new cars, which was made ready for that use, and so used only on that occasion, and had not been demonstrated to anyone else; that it was the car subsequently sold to plaintiffs; that it had been driven around only a few times in the process of "tuning it up, and getting it ready." Lawrence testified that when charged by plaintiffs with having sold plaintiffs a "demonstrator," he merely explained the actual facts to them. Both witnesses testified that the car was in good condition after "tuning up," and was in "A-1 shape."

[1] The conflict in the testimony in support of the finding that the car was not new was a matter for the consideration of the lower court. The matter of credibility of the witnesses, the weight to be given to the testimony of each was a matter resting in the discretion of the trial judge, whose determination may not be reviewed by us.

Appellants next contend that the testimony relative to the condition of the car, whether sufficient to support the finding or not, was erroneously admitted, for two reasons; first, that Cousins and Lawrence were not shown to be the agents of defendant, hence any statements made by them in the premises were not binding on defendant; and, second, even though an agency was shown, the statements, or alleged admissions, as to the car not being new, were made after the transaction was closed. These contentions, we think, are correct.

[2] The witness Buckingham, vice-president of the defendant company, Cousins, and Lawrence each testified that the latter two had no connection whatever with the defendant corporation, and were not its agents. The plaintiffs introduced testimony to the effect that when the lease was being signed, Lawrence and Cousins were accompanied by a young man named Darling, and said by Cousins and Lawrence to be from the Funding Company, who made inquiries about the payment of the installments under the contract, and who went away, saying as he left, "I now turn you

over to these gentlemen, who will act as our agents," referring to Lawrence and Cousins. Defendant's vice-president testified that Darling was not an agent of, and had no connection whatever with, defendant. Lawrence and Cousins testified that he was the representative of another concern, engaged in business similar to that of the defendant, and that he was interested in securing the contract if defendant did not consummate the deal. On cross-examination plaintiffs' counsel asked the vice-president of the defendant, referring to Darling, "So you did not act through him, but you acted merely through the Chevrolet Motor Car Company, in having the contract signed?" The witness answered, "Yes, sir." This is all the evidence relied on by respondents to establish the fact that the relation of principal and agent existed between defendant and Cousins and Lawrence. In our judgment it does not have that effect.

When defendant, having fully prepared all the necessary papers for the transaction between itself and plaintiffs, intrusted them to Cousins and Lawrence, with instructions to have them properly signed and returned, it made them its agents for that particular purpose, and for nothing else. The deal between plaintiffs and the Chevrolet people for the purchase by plaintiffs of the car had already been arranged for. Consequently, we find nothing in the transaction itself sustaining the finding that the relation of principal and agent existed to the extent that representations made by Cousins and Lawrence before defendant was in any way a party thereto were binding on the latter.

[3] Appellant's second ground of objection to the admission was equally good. The alleged declarations of Cousins and Lawrence, if established, were not made until long after the automobile deal was closed.

It is a well-established general rule that only those representations, declarations, and admissions of an agent, respecting the subject matter of a transaction, will bind the principal, which are made at the same time, and constitute a part of the *res gestae.* (*Moore* v. *Bettis,* 30 Tenn. 67, [53 Am. Dec. 771, 772, and note].) [4] The more recent cases, likewise, support the general rule that the unauthorized declarations or admissions of an agent, not made contemporaneously with the occurrence or transaction to which they relate, are not competent evidence against the principal, unless they

are so immediately connected with the transaction as to constitute a part thereof. (*Peterson Bros.* v. *Mineral King Fruit Co.*, 140 Cal. 624, 629, 630, [74 Pac. 162]. See, also, cases cited in notes to *Conklin* v. *Con. Ry. Co.*, 196 Mass. 302, [13 Ann. Cas. 859, 82 N. E. 23].) ·

The judgment is reversed.

Kerrigan, J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 28, 1919.