261 S.W.2d 497 (1953)
LIX
v.
GASTIAN.
No. 28602.
St. Louis Court of Appeals. Missouri.
October 20, 1953.
*498 E. L. McClintock, Jr., Flat River, for appellant.
Roberts & Roberts, Farmington, for respondent.
ANDERSON, Judge.
This is a negligence action wherein plaintiff, Henry Lix, sought to recover for damage to his automobile, which damage was alleged to have resulted from a collision between said automobile which was at said time being operated by his stepson, Wayne Adams, and an automobile owned and operated by defendant, W. V. Gastian. Defendant Gastian filed a counterclaim for damage to his automobile. The trial resulted in a verdict and judgment for defendant on plaintiff's cause of action, and for defendant on his counterclaim in the sum of $343.23. From said judgment, plaintiff has appealed.
The collision in question occurred in Desloge, Missouri, near the intersection of Monroe and Hickory Streets, about 5:30 p. m. on May 25, 1951. Plaintiff was the owner of a 1941 Chevrolet automobile which was at the time in question being driven north on Monroe Street by Wayne Adams. The defendant at said time was operating his 1949 Chrysler automobile south on Monroe Street, intending to make a left turn into Hickory Street, and the collision occurred while he was in the act of making said turn.
Plaintiff's witness Wayne Adams testified that when he was about one-half block south of the intersection in question he observed the defendant's car starting to turn left into Hickory Street. He stated that defendant's car was at the time about 23 feet north of the intersection, and that he (Adams) was traveling about 40 miles per hour. Adams further testified that immediately after observing defendant's car on his (Adams') side of the street, making the turn north of the intersection, he applied his brakes and attempted to swerve to the left; that his brakes took effect and the car skidded a distance of about 95 feet and collided with defendant's car; that his car did not respond to his attempt to swerve, but "slid in the gravel and went sideways." The evidence of both parties showed that there was loose chat in the intersection. Adams further testified that he could have stopped or swerved his car before colliding with defendant's automobile had it not been for the chat. He stated that he knew the chat was in the intersection, and was aware that if *499 he applied the brakes while on gravel his car would be likely to slide. The impact, according to the testimony of Adams, took place north of the intersection and on the east side of Monroe Street. The right front of plaintiff's car struck the right front of defendant's automobile. Adams stated that his car traveled about 15 or 16 feet after striking defendant's automobile.
Charles Tucker, a member of the State Highway Patrol, arrived at the scene shortly after the accident occurred. He stated that the skid marks made by plaintiff's car measured 95 feet from where the brakes had taken effect to the place where the plaintiff's car came to a stop. The witness placed the point of impact at 33 feet north of the center line of Hickory Street and about 23 feet north of the north line of Hickory Street, and on the east side of Monroe Street. The point of impact could be determined, according to Tucker, from the location of the debris and the skid marks made by defendant's car as it was pushed sideways by plaintiff's car. Tucker stated that the defendant's car was pushed back from the point of impact about 15 feet, and sideways about 6 feet, and came to rest at an angle of about 30 degrees to the roadway.
Defendant Gastian testified that just prior to the accident he drove south on Monroe Street, intending to turn east on Hickory Street. He stated that his speed at the time was about 20 miles per hour. Defendant further testified that he first saw the plaintiff's car, driven by Adams, when he reached a point 60 to 80 feet north of the intersection. At that time, according to defendant's testimony, plaintiff's car was about 444 feet south of the intersection. It further appears from defendant's testimony that when he reached a point 15 or 16 feet north of the intersection he started to turn left into Hickory Street. At that time, according to defendant's testimony, the plaintiff's car was about 350 feet south of Hickory Street. Defendant further testified: "He was coming so fast, I just misjudged his speed * * * and about the time I got my turn pretty well into operation, coming into Hickory Street, he hit me. * * * I judged he was driving 50 or 60 miles an hour. He was coming very fast. That was just my estimate of his speed."
From defendant's testimony it also appears that the point of impact was in the northeast quadrant of the intersection, and that defendant's car, as a result of the collision, was pushed backward about a car's length and sidways about 6 feet. According to defendant's testimony, plaintiff's car came to rest on the west side of Monroe Street, about 35 or 40 feet from the point of impact.
On cross-examination, defendant gave the following testimony:
"Q. I will ask you if in making this turn, in attempting to make this left turn, you ran beyond the center of the intersection, passing to the right thereof, before turning such vehicle toward the left. Did you do that? A. I did not, because there is a pile of chat there, as I explained."
The evidence shows that located in the intersection, on the black top surface thereof, was a pile of coarse chat 3 or 4 inches in height.
Appellant concedes that there is ample evidence in the record to warrant a finding that Wayne Adams was guilty of negligence at the time of said collision, but contends that the court erred in submitting defendant's counterclaim for the reason that defendant failed to produce any substantial evidence of negligence on the part of plaintiff, Henry Lix.
The negligence charged against Henry Lix, and submitted by defendant's instructions, was: "That the plaintiff, Henry Lix, knew or by the exercise of due care could have known that Wayne Adams was a negligent, reckless and careless driver at the time he permitted the said Wayne Adams to drive the automobile owned by the plaintiff and by virtue of the fact was guilty of negligence in so loaning his automobile."
Wayne Adams resided with his mother and stepfather in Desloge, and worked at a *500 filling station in Flat River. He had been working for about six months, and during that time had been allowed the use of plaintiff's automobile to convey himself to and from his place of work. About one year prior to colliding with defendant's automobile Wayne Adams was arrested and plead guilty in a Magistrate Court to a charge of careless and reckless driving. On that occasion he was fined $32.50 and given a jail sentence, which was suspended. Adams had been drinking at the time. His stepfather paid the fine.
The record further shows that Adams had been driving for about three years and had never had an accident prior to the one he had with defendant. His stepfather, the plaintiff, called to the stand by defendant, testified that he had ridden with Adams quite frequently and thought that his stepson operated a car very well. He further stated that he knew of the previous charge made against his son at the time of his son's arrest, and knew that Adams was given a jail sentence at the time.
Defendant Gastian testified that Wayne Adams had a reputation in the community as "a fast driver".
Do the foregoing facts make out a case of negligence against the plaintiff, Henry Lix?
Liability in this case is not sought to be imposed under the doctrine of respondeat superior, but upon the theory that Lix entrusted his automobile to Adams, knowing that the latter was a reckless and careless driver.
The general rule is that an owner of an automobile is under a duty not to place the automobile in the hands of a person whom he knows, or in the exercise of reasonable diligence could have known, to be an incompetent, careless, reckless, or inexperienced driver. Any violation of this duty is negligence, which becomes actionable when the borrower, through negligent operation of said car, injures another. The injury in such a case is said to be the proximate result of the combined negligence of the owner and driver, making said parties joint tort-feasors. Saunders v. Prue, 235 Mo.App. 1245, 151 S.W.2d 478; Dinger v. Burnham, 360 Mo. 465, 228 S.W.2d 696; 60 C.J.S., Motor Vehicles, § 431, p. 1057; 5 Am.Jur., Automobiles, sec. 355, p. 696. See Annotations, 36 A.L.R. 1148; 68 A.L.R. 1013; and 100 A.L.R. 923; Restatement of the Law of Torts, Vol. 2, sec. 390, p. 1058.
Incompetence of the borrower may be shown by specific acts of carelessness and recklessness committed by him. Guedon v. Rooney, 160 Or. 621, 87 P.2d 209, 120 A.L.R. 1298; Clark v. Stewart, 126 Ohio 263, 185 N.E. 71. And, the owner's knowledge of the driver's incompetence may be shown either by evidence that he in fact knew of such acts, or by evidence that the driver's incompetence was generally known in the community. Guedon v. Rooney, 160 Or. 621, 87 P.2d 209, 120 A.L.R. 1298; Young v. Fresno Flume & Irrigation Co., 24 Cal.App. 286, 141 P. 29. But, before liability can be imposed in such a case it must be shown that the reckless conduct of the borrower was so constantly committed as to constitute a habit of negligence. Guedon v. Rooney, 160 Or. 621, 87 P.2d 209, 120 A.L.R. 1298; Davis v. Shaw, La.App., 142 So. 301; Mayer v. Johnson, Tex.Civ.App., 148 S.W.2d 454; Ward v. Koors, Ohio App., 33 N.E.2d 669. Absent such a showing, it cannot be said that the owner should have anticipated the likelihood of injury or danger to others by so lending his car. It would be undesirable and unrealistic to hold otherwise. Pittsburgh Rys. Co. v. Thomas, 3 Cir., 174 F. 591.
In the case at bar there was no showing of habitual reckless conduct on the part of Adams. All that was shown was that, on one occasion, approximately one year prior to the collision with defendant, Adams had been arrested and plead guilty to a charge of careless driving. This showing was not sufficient to make out a case of negligence against Henry Lix. Nor does the fact that Adams had a reputation for fast driving, as testified to by defendant, *501 establish either habitual negligence on the part of Adams, or negligence on the part of Lix in lending his car to Adams.
There was no showing of facts and circumstances which would indicate that Adams' previous fast driving was, in any instance, negligent driving. Furthermore, proof of habitual carelessness cannot be established by reputation, but must be established by evidence of specific acts of negligence. General reputation is competent only to establish knowledge on the part of the lender, after a foundation has been laid by proof of specific acts sufficient to establish habitual negligence. Guedon v. Rooney, supra; Park v. New York Central & H. R. R. Co., 155 N.Y. 215, 49 N.E. 674.
It is our conclusion that the trial court erred in not directing a verdict for plaintiff on defendant's counterclaim.
Appellant next complains that the court erred in giving, at defendant's request, Instruction No. 3. By said instruction the jury were directed to find for the defendant on plaintiff's cause of action if they found that the accident was the proximate result of the combined negligence of plaintiff in entrusting his automobile to Adams, knowing that the latter was a reckless driver, and the negligence of Adams in operating the said automobile at said time.
We have held that the evidence was not sufficient to warrant the submission of the defendant's counterclaim on the theory that plaintiff was negligent in entrusting his car to a known careless and negligent driver. By the same token, it necessarily follows that it was error to submit contributory negligence, based on the same theory, as a defense to the cause of action alleged in the petition.
On account of the error in giving said instruction the judgment cannot stand, and we are therefore confronted with the problem of determining what orders are proper in the disposition of the appeal. Appellant contends that we should dispose of the case by reversing the judgment and remanding the cause with directions to enter judgment for plaintiff on his cause of action, and in favor of plaintiff on defendant's counterclaim. In support of this contention it is urged by plaintiff that he is entitled to judgment on his cause of action because of the admitted failure of defendant to comply with Subsection 6 of Section 304.020 RSMo 1949, V.A.M.S., and that he should have judgment on the counterclaim for the reason that defendant failed to produce substantial evidence of the negligence charged against plaintiff in said counterclaim.
Section 304.020(6), supra, provides that motorists approaching an intersecting highway with the intention of turning thereat shall, in turning to the left, "run beyond the center of such intersection, passing to the right thereof, before turning such vehicle toward the left".
It is plaintiff's theory that defendant's admitted violation of the foregoing statute constituted negligence per se and, for that reason, we should direct the trial court to enter judgment in plaintiff's favor.
A failure to comply with the statute, in the absence of a showing of a reasonable excuse for its nonobservance, constitutes negligence per se. Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713; Robinson v. Mayer, Mo.App., 94 S.W.2d 1067; Beck v. Wurst Coal & Hauling Co., Mo.App., 293 S.W. 449. But, where there are facts from which a jury might reasonably find a valid excuse for failure to observe the statutory rule, such violation becomes merely evidence to be considered along with other circumstances in determining the existence of negligence. Cantwell v. Cremins, 347 Mo. 836, 149 S.W.2d 343; Willhite v. City of St. Louis, 359 Mo. 933, 224 S.W.2d 956. Thus, where it appears that failure to comply with the statute was induced by considerations of safety, as where there is a dangerous obstruction to be avoided, the court will not consider such deviation from the statutory standard as negligence per se. We believe that such a situation is presented in the case at bar.
*502 Whether the chat in the intersection presented such an unreasonable risk of bodily harm to one making a left turn into Hickory Street as would justify a failure to comply with the statute was a question of fact which made the issue of negligence a jury question.
There is also involved in the case the issue of proximate cause. Regardless of whether the violation of the statute be regarded as negligence per se, or merely evidence of negligence for the jury's consideration, the plaintiff must show a causal connection between the injury received and the negligence charged. Whether the accident in this case proximately resulted from the negligence of defendant or from the sole negligence of Adams was a question of fact for the jury.
The judgment is reversed and the cause is remanded for a new trial on the issues raised by plaintiff's petition and defendant's answer thereto, after which judgment should be entered on plaintiff's cause of action in accordance with the verdict rendered at said new trial, and for plaintiff on defendant's counterclaim.
BENNICK, P. J., and HOLMAN, Special Judge, concur.