## WARD v KOORS

Ohio Appeals, 2nd Dist, Montgomery Co

No 1382.   Decided June 8, 1936

George E. Alcorn, Dayton, John D. McLaren, and A. W. Schulman, Dayton, for plaintiff in error.

Legler & Murray, Dayton, for defendant in error.

## OPINION

By HORNBECK, J.

Defendant in error, as plaintiff, instituted her action against plaintiff in error and his son, Dale Ward, for damages suffered by reason of injuries to the defendant in error by reason of the alleged negligence of the son, Dale Ward, in the operation of the automobile of his father and the negligence of the father in entrusting the use of the automobile to the son, whom it was alleged was an incompetent, unskillful, inexperienced and unfit operator of said automobile and known to be such by his father.

Upon issues drawn the jury returned a verdict in favor of the plaintiff below against both defendants. Error is prosecuted by Charles H. Ward only. We shall refer to the parties as they appeared in the trial court.

The evidence disclosed that the plaintiff was standing on the sidewalk near the west curb of Main Street in the City of Dayton, Ohio, talking with a man by the name of Sam Wonderley, who was sitting in his Nash automobile, which was parked on the West side of Main Street, near the curb, headed south, with its front right door open; that the plaintiff was leaning against the open door of the automobile; that the defendant, Dale Ward, driving his father's Chevrolet Coach, with two young women passengers with him in the front seat, was driving north on said Main Street. It was charged that he was operating the automobile at a high and dangerous rate of speed, namely, about forty miles per hour, and that in attempting to pass an automobile in front of him he suddenly turned his car to the left, drove over onto the western half or his wrong side of Main Street, striking the left front of the Nash automobile in which Sam Wonderley was sitting, knocking it against the curb, causing the open door of the Nash to strike the plaintiff, rendering her unconscious and injuring her otherwise.

The specifications of negligence against the defendant, Dale Ward, were excessive speed, that he drove his car on the wrong side of Main Street, failed to maintain a proper lookout, and negligently overloaded the front seat of the automobile. Defendants offered considerable testimony tending to show that Dale Ward was suddenly forced over to the left side by a Ford automobile which had been moving with him in the line of traffic moving to the north, and that the accident was caused by the negligence of the operator of this Ford car. Though the evidence was in marked conflict touching the negligence of Dale Ward, the jury was well within its province in concluding that he was negligent, proximately causing the injuries of which plaintiff complained.

The accident upon which the cause of action of plaintiff was based occurred on March 24, 1934. Dale Ward would have been twenty years of age on the 28th of March, 1934.

The negligence charged against the father, Charles H. Ward, was that he permitted his son, a known inexperienced and incompetent driver, to operate his (the father's) car on March 24, 1934. It appeared that on February 28, 1931, when Dale Ward was sixteen years of age, he took the automobile of his father without consent and in company with three other boys, two of whom were in the front seat, drove the automobile south from Dayton on the Dixie Highway and onto and across a viaduct, over what is known as Dead Man's Crossing. The night was rainy and as Dale Ward was moving across the viaduct his car came into collision with a car driven by a Mr. Frantz. Dale was thrown from the car, taking some of the steering wheel with him.

There were three versions of how this collision occurred. William A. Minnix testifying for the plaintiff, one of the passengers who was in the front seat with Dale Ward, did not undertake to fix the speed at which they were moving as they came onto the viaduct, but said that:

"It was raining that night and as we struck the bottom of the viaduct and started up the hill, there was more gas fed into the motor, and not having the tread on the tires, the wheels slipped to one side and the car swerved either right or left, I don't know which. It alternated a couple of times and we went across the top of the viaduct sidewise."

He says that in his judgment, when the cars came into collision the Hupmobile which Dale Ward was driving was on the wrong side of the road.

L. G. Frantz called by the plaintiff describing the collision in the viaduct, said that he was driving up the south ramp, pretty well toward the top, when he noticed a car approaching from the north on the wrong side of the road, headed directly into him; that the driver of the other car (Dale Ward) apparently recognizing that there might be a collision, suddenly attempted to pull his car over onto his right side of the road, causing it to skid cross-wise of the road and that it hit the Frantz car broadside in the center of his car; that at the time of the collision the Ward car was cross-wise of the road.

Dale Ward testifying for the defense, describing the accident, says that driving his father's Hup he went up onto the viaduct at a speed of about forty miles per hour; that when going down the viaduct the Frantz car was coming up and that there was a bump at the bottom of the hill and the lights from the Frantz car were in his eyes; that he applied the brakes and the road being wet his car skidded; that the Frantz automobile side-swiped the Ward automobile. He admits that at the time of collison part of his car was on its wrong side of the road. The only proof of the speed of the Ward car at the time of the accident came upon the testimony of the defense.

It will be observed that though there was some conflict in the testimony as to how the accident happened on the viaduct, the jury very properly could have concluded that it was caused by the negligence of Dale Ward in driving his father's automobile.

Charles H. Ward called by the plaintiff for cross-examination and testifying for the defense said that his son Dale was slightly hard of hearing, from which affliction he had suffered since he was about eight years of age; that some little time after the accident, in February, 1931, he learned of it; that he was present when an agent for the insurance company took a statement from his son concerning the collision and that he heard what his son then said; that he learned that there were three in the front seat of the Hupmobile; that he had learned that it was claimed that the Hupmobile was skidding on the viaduct at the time of and prior to the collision; that he knew that it had been raining. This is all that the record shows touching the manner in which the first collision occurred and the knowledge of Charles H. Ward concerning it.

The testimony further developed defensively that the son had been permitted by the father to drive his automobiles from the time of the first accident up to the time of the accident in which plaintiff was injured; that the father had owned some make of automobile continuously during the period between the collisions; that the son regularly drove the father's automobile to and from school; that when the family took rides the son did the driving; that he had been in the employ of an elderly lady for four months as her driver. There was testimony that he was a careful driver and observed traffic laws. It is testified by the father and the son that he had had no

accidents other than the two appearing in the record.

The questions presented are two: First, does the evidence in its most favorable aspect to the plaintiff make a cause of action against Charles H. Ward as a matter of law? Second, was there misconduct of the jury in returning a verdict against Charles H. Ward?

The principle upon which the plaintiff must recover has no relation whatsoever to the fact that the parties defendant were father and son.

Something is claimed by the plaintiff because of the partial deafness of Dale Ward. If there had been any factor tending to cause either collision which could in any wise be attributed to this affliction, then it might be given some consideration. But as we view the evidence it does not appear that the partial deafness in any wise contributed to either collision. There is no showing of the sounding of a horn which Dale Ward did not hear, or any noise incident to the movement of the automobile which, if he had heard, might have prevented either collision. As a matter of fact, nothing appears from either collision which indicates that Dale Ward would have been prompted to act any differently if his hearing was unimpaired.

It appears that in both accidents Dale Ward had two persons with him in the front seat. This practice may or may not constitute negligence, but standing alone it would not constitute notice to the father that his son was an incompetent and unskillful driver.

The negligence of the father must be gauged entirely by his failure to exercise ordinary care in permitting his son to drive his automobile at the time of the last accident, in view of what he knew about the collision in 1931. The most that can be said for the notice which came to the attention of the father is that the first collision was caused by his son's negligence.

Elliott v Harding, 107 Oh St, 501, which is the controlling case in Ohio on the subject holds that though an automobile is not a dangerous instrument per se, it may become such if operated by one who is unskilled in its use and where the owner entrusts a machine to an inexperienced or incompetent person liability for damages may arise. Though not carried into the syllabus, it is stated in the opinion, and is recognized as an essential to the liability of the owner, that the owner must have knowledge of such inexperience or incom-

petence of the person to whom he has entrusted the use of his automobile.

In some states the word "reckless" is used in conjunction with incompetent or inexperienced. A driver may be experienced and competent and yet chargeable with negligence in the operation of an automobile. There is a difference between recklessness and inexperience and incompetence, but we concede that the recklessness of a driver might be of such character as to mark him as an incompetent driver.

In Elliott v Harding, supra, the father had authorized and directed his minor son, aged 14 years, to drive his (the father's) automobile on the public highway. After completing the trip which the father had authorized, young Elliott took the machine on another trip and the collision then occurred out of which the action arose. The son, though riding in the car, was not driving it, but had entrusted it to another. The father, in permitting the son to use the automobile, did so without any knowledge of his ability to drive a car, had never observed him driving nor been with him on any trip when he had driven and the son was immature in age. It is obvious that these facts provide the basis both for the claim of inexperience and incompetence. None of them is found in the instant case. Here the knowledge chargeable to the father of the incompetence, inexperience or recklessness of the son is predicated entirely upon one act of negligence, occurring years before the negligent act immediately causing the injury of which plaintiff complains.

The insuperable difficulty in the conclusions to be drawn from the facts in this case, as we view them, is the time element. Here more than three years elapsed from the occurrence of the first collision and that of the second. According to the record nothing whatever in this interim occurred which would, in the slightest degree, tend to establish that Dale Ward was an incompetent, inexperienced or reckless driver. His father had opportunity to observe and know of his experience in operating automobiles for the three years subsequent to the first accident and nothing occurred which would put him on notice that his son was an unsafe person with whom to entrust the use of an automobile.

In Pittsburgh Rys. Co. v Thomas, 174 Fed. Rep. 592, we find this syllabus:

"In order that prior specific acts of negligence by a fellow servant should be sufficient to establish the master's negligence

in retaining the servant in his employ, the acts must be the result of incompetence, or of such a character and so constantly committed as to constitute a habit of negligence, rendering the servant unfit to be retained in his position."

This was an action involving the claimed negligence of a master in employing a motorman on a street car, whom the master knew or should have known was incompetent and unfit to operate the car.

It is not necessary for us to hold that repeated acts of recklessness by a driver of an automobile, known to the owner, would be necessary to put him on notice of the incompetence of the driver, but the other factors which are present in this case dispel the inference of incompetence of the driver if any arises by reason of the first collision.

We are of unanimous opinion that the proof adduced is insufficient in law to support the claim that the father was negligent in entrusting his automobile to an unskilled and incompetent driver. At the time of the first accident the son was sixteen years of age, could have been granted a chauffeur's license in Ohio, drove regularly thereafter, and at the time of the second collision was almost twenty years of age and had reached a period in life when men are normally well qualified to properly drive an automobile.

It is too much of a burden to lay upon a parent to require him to answer for the negligent operation of an automobile by his son, based solely upon his knowledge of an accident which had occurred more than three years before, in which it happened that the son was negligent.

The motion of defendant for a directed verdict at the conclusion of plaintiff's case should have been sustained. This should have disposed of the case, but as the testimony developed the defense of the father was strengthened. It developed the operation of automobiles by the son regularly from the time of the first accident until the second accident; that he had been a careful driver; that he had been employed for several months as a driver for an elderly lady, all of which was to the effect that he was an experienced and competent driver.

The motion of defendant for directed verdict was renewed at the conclusion of the whole cause and should have been sustained.

We have examined the further claim of error, namely, misconduct of the jury in rendering a verdict against the father, in the light of an inquiry which the jury made of the court after the cause was submitted, if a verdict against the defendant, Dale Ward only, would leave plaintiff without definite assurance or certainty of compensation. The court in response to the inquiry charged the jury that it should render its verdict upon the evidence and the law and upon no other basis. We assume that the jury observed this admonition and that no improper purpose actuated or controlled its verdict against the father.

Judgment reversed and final judgment for the defendant, Charles H. Ward.

BARNES, PJ, and BODEY, J, concur.