(59 App. Div. 145.)

McCARTHY v. RITCH et al.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. MASTER AND SERVANT—SERVANT'S INCOMPETENCY—ADMISSION OF EVIDENCE —SPECIFIC ACTS—GENERAL REPUTATION.

In an action against a master for his servant's negligence, after proof was given of specific acts of such servant showing incompetency, admission of testimony as to the servant's general reputation for competency in his line of work was error.

2. SAME—INSTRUCTIONS—ERROR NOT CURED.

In an action against a master for his servant's negligence, an instruction that testimony as to the servant's general reputation for unskillfulness should be considered only as tending to show that the master was chargeable with knowledge of such defect in his servant did not cure the error of admitting such testimony.

Appeal from trial term, Westchester county.

Action by William J. McCarthy against William T. Ritch and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

L. Laflin Kellogg, for appellants.
William L. Snyder, for respondent.

JENKS, J. This judgment must be reversed. A servant sues to recover damages for personal injuries suffered through the alleged negligence of his master. The question involved liability for the acts of an alleged fellow servant, Bradley, a "powderman," who, it is contended, was ignorant and incompetent. The plaintiff, a driller and general laborer in the defendants' quarries, was directed to assist Bradley in making a blast. On the day before the accident two holes, about 20 feet deep and 10 or 12 feet apart, had been drilled in a shelf of rock. The holes were partly charged with powder, exploding caps were placed upon the powder, more powder was poured in, and then a tamping of sand completed the charge. Each exploder was connected by two wires running to the surface of the rock, and one wire from an exploder was connected by wire to a wire running from the other exploder, and a further and common connection was made with the cables of an electric battery. At Bradley's command, the plaintiff

completed the electric circuit, and an explosion followed. Bradley then tested the first hole with a "needle" (a steel rod about 25 feet long), and said that it was "all right." He then tested the second hole, and said that the tamp remained, and then directed the plaintiff to drill it out. The details of the drilling were from time to time directed by Bradley, and while the work was progressing there was an explosion, which severely injured the plaintiff.

The learned counsel for the respondent contends in his brief that the main question was, did the defendants perform their duty in the choice of Bradley? He argues that the first question was whether Bradley was competent to perform the duties of powderman; and that, if he was not, the second question was, did the defendants know of his incompetency, or had they the means of knowledge thereof, or did they ever make any effort to ascertain his qualifications? The plaintiff called Hamilton to the witness stand. He testified that he had worked in a quarry adjacent to that of the defendants, and that he had personal knowledge of certain "shots" (or blasts) that Bradley had fired which the plaintiff contended showed his unskillfulness. This question was then put to the witness:

"Do you know what the general reputation of Mr. Bradley was among the men in the quarry and in the neighborhood and in the community there? A. Yes, sir. Q. What was it? (Objected to as incompetent, irrelevant, and immaterial, and not warranted by any foundation at present laid in this case. Objection overruled. Exception.) A. Never was a powderman that anybody ever knew of, or never fired any shot. By the Court: Q. The question is: What was his general reputation? What did everybody say about him? A. Said he was no powderman. Q. That he was no powderman? A. Yes, sir. By Mr. Snyder (plaintiff's counsel): Q. These three shots I have asked you about, were they talked about in the quarry? The Court: You have got enough. You have proved his general reputation, that he was no powderman."

I think that the admission of this testimony was error.

In Park v. Railroad Co., 155 N. Y. 215, 49 N. E. 674, the court, per Haight, J., said (page 218, 155 N. Y., and page 674, 49 N. E.):

"We are aware that in some states the courts have permitted incompetency of servants to be shown by general reputation, but we have never gone to that extent in this state. It appears to us that the safer and better rule is to require incompetency to be shown by the specific acts of the servant, and then that the master knew, or ought to have known, of such incompetency. The latter may be shown by evidence tending to establish that such incompetency was generally known in the community. Marrinan v. Railroad Co., 13 App. Div. 439, 43 N. Y. Supp. 606; Baulec v. Railroad Co., 59 N. Y. 356; Monahan v. City of Worcester, 150 Mass. 439, 23 N. E. 228; Gilman v. Railroad Co., 13 Allen, 433; Davis v. Railroad Co., 20 Mich. 105."

We followed this decision in Lambrecht v. Pfizer, 49 App. Div. 83, 63 N. Y. Supp. 591, saying, per Woodward, J.:

"It is necessary, under the rule laid down by the court in Park v. Railroad Co., 155 N. Y. 215, 49 N. E. 674, that incompetency shall be shown by the specific acts of the servant, and that the master knew, or ought to have known, of such incompetency."

My interpretation of those decisions is, not that evidence of specific acts opens the door for the admission of testimony as to mere general reputation, but of testimony that knowledge of such specific acts was general in the community. Thus, in the Park Case (supra), the court say:

"The character of this evidence has recently been under consideration in this court in the case of Youngs v. Railroad Co., 154 N. Y. 764, 49 N. E. 1106. Inasmuch as there was no opinion written in that case, we will briefly allude to the facts and the question decided. In that case, as in this, it became necessary to show that an employé was incompetent. This the plaintiff sought to do by showing his general reputation for carelessness from the speech of people. It was objected to by the defendant, the objection was sustained, and an exception was taken by the plaintiff. The court then stated to plaintiff's attorney: 'I will allow you to show any specific acts of negligence on the part of the engineer while engaged in the business of engineering, and I will allow you to show that those acts of carelessness were generally known in the community, and that the defendant had actual knowledge of such specific acts, or that they were so general that, upon proper inquiry, the defendant ought to have known.' A nonsuit was granted, and the same was affirmed in the general term and in this court."

In the Lambrecht Case (supra), Woodward, J., further says (page 84, 49 App. Div., and page 592, 63 N. Y. Supp.):

"The burden of proof was upon the plaintiff to establish the specific acts on the part of the servant which would justify a reasonable person in saying that he was incompetent to perform the particular services for which he was employed, and in the performance of which the accident occurred, and that the master knew of these acts on the part of the servant, or that in the exercise of reasonable care he should have known them. Evidence tending to show that it was generally known in the community that the servant had been guilty of these specific acts of negligence or incompetence would be proper in support of the proposition that the master did know, or that he might, in the exercise of reasonable care, have known, of them; but the trial court very properly excluded evidence of the servant's general reputation among his fellow servants."

At the close of the charge to the jury, the learned counsel for the defendant said:

"I ask you to charge that the jury cannot consider any question of general reputation as to the competency of Bradley, unless the foundation is laid in showing specific acts of Bradley showing incompetency. The Court: That is a matter which I am glad you called my attention to. The evidence that is in this case, that Bradley had a reputation as being an incompetent powderman, is not to be taken at all as proving that he was incompetent. I only admitted it as having a bearing upon whether these defendants had notice that he was incompetent, but not in any manner as proving that he was incompetent. You must not give that any weight at all, when you consider the question of whether, as matter of fact, he was incompetent. That must be determined upon the other evidence."

The learned counsel said:

"I except to your honor's charge wherein it says that that evidence is competent for any purpose. The Court: That exception you got when I admitted it."

In my opinion, this does not cure the error. The rule is as to such proof that the plaintiff must first show specific acts, and then the general knowledge in the community of such specific acts. If mere testimony that everybody said that Bradley was no powderman was admissible as showing constructive notice to these defendants, then evidence of reputation, unconnected with any specific acts, was admissible for that purpose, which I think is counter of the rule. Reputation general in the community for incompetency, based upon acts, or reputed acts, of ignorance or carelessness, is one thing; the mere gossip or speech of people, that may have no foundation upon acts

even alleged, is another. The learned counsel for the appellants seems to have recognized the difference when, in the course of the trial, he asked the witness, "These three shots I have asked you about, were they talked about in the quarry?" but the learned court inadvertently checked further inquiry by saying, "You have got enough; you have proved his general reputation, that he was no powderman." This was the sole testimony touching the reputation of Bradley, and, under the ruling and charge of the court, it cannot be said that the jury may not have regarded it as evidence tending to establish liability in the defendants upon the question mainly contended. The reversal is upon the grounds indicated, and no opinion is intended to be expressed either upon the liability or the immunity of the defendants in this action.

The judgment and order must be reversed, and a new trial granted, costs to abide the final award of costs. All concur.