PITTSBURGH RYS. CO. v. THOMAS.

(Circuit Court of Appeals, Third Circuit. November 29, 1909.)

No. 49.

1. MASTER AND SERVANT (§§ 170, 171*)—INJURIES TO SERVANT—EMPLOYMENT OF COMPETENT FELLOW SERVANTS.

A master is liable for failure to exercise the care of an ordinarily prudent man to select servants competent for the performance of duties required of them in accordance with the character of the employment and the dangers to be anticipated; such being a primary and nondelegable duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 336, 341; Dec. Dig. §§ 170, 171.*]

2. MASTER AND SERVANT (§ 216*)—RISKS ASSUMED BY SERVANT.

While a servant assumes the risk of negligence of a fellow servant, he does not assume the risk of negligence of the master in employing an incompetent servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 567; Dec. Dig. § 216.*]

3. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—BURDEN OF PROOF.

Where a servant's injuries were alleged to have been caused by the master's negligence in employing or retaining an incompetent servant, the burden of proof thereof was on plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 906; Dec. Dig. § 265.*]

4. MASTER AND SERVANT (§ 287*)—INJURIES TO SERVANT—INCOMPETENT FELLOW SERVANT—EMPLOYMENT—NEGLIGENCE.

In an action for injuries to a street car conductor by the alleged negligence of his motorman, evidence *held* to require submission to the jury

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the question of the railroad company's negligence in employing the motorman or retaining him in its employ with knowledge of his alleged incapacity. °

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1054–1056; Dec. Dig. § 287.*]

5. MASTER AND SERVANT (§ 271*)—INJURIES TO SERVANT—FELLOW SERVANTS—INCOMPETENCY—EVIDENCE—SPECIAL ACTS.

On an issue as to a master's negligence in retaining a servant with notice of his incompetency, previous specific acts of the servant, indicating incompetency or unfitness, which were or should have been known to the master, are admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 930; Dec. Dig. § 271.*]

6. MASTER AND SERVANT (§ 279*)—FELLOW SERVANTS—NEGLIGENCE—NEGLIGENT EMPLOYMENT—SPECIFIC ACTS.

In order that prior specific acts of negligence by a fellow servant should be sufficient to establish the master's negligence in retaining the servant in his employ, the acts must be the result of incompetence, or of such a character and so constantly committed as to constitute a habit of negligence, rendering the servant unfit to be retained in his position.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 974; Dec Dig. § 279.*]

7. MASTER AND SERVANT (§ 297*)—INJURIES TO SERVANT—FELLOW SERVANT—NEGLIGENT EMPLOYMENT—SPECIAL FINDINGS.

Where a master was charged with negligence in retaining in its employ plaintiff's fellow servant by whose negligence plaintiff was injured, prior specific acts committed by such fellow servants were inadmissible to show negligence, but only to show his incompetency; and hence the court erred in submitting such acts to the jury under interrogatories: "Would you, if you were trying that case, say that the motorman was guilty of negligence, or was it the result of his incapacity, which would mean the same thing?" "Was he incompetent in the operation of his car?" "Was his conduct negligence?" "That if he could have avoided either of the accidents with the skill that a motorman is supposed to have in running a car, then it would be the result of his negligence and evidence of his incompetency."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. § 297.*]

8. MASTER AND SERVANT (§ 271*)—INCOMPETENCY OF FELLOW SERVANT—CHARACTER—REPUTATION IN A PARTICULAR CALLING.

Where it was claimed that a motorman was so incompetent that the street railway company was negligent in employing him, evidence that his reputation for competency as a motorman, among the conductors and motormen who daily congregated to the number of 30 or 40 in the car barn, was bad, was admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 931; Dec. Dig. § 271.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by David T. Thomas against the Pittsburgh Railways Company. From a judgment for plaintiff, defendant brings error. Reversed.

James C. Gray, for plaintiff in error.

Rody P. Marshall, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

*For other cases, see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GRAY, Circuit Judge. The defendant in error, David F. Thomas (hereinafter called the plaintiff), brought suit against the Pittsburgh Railways Company, the plaintiff in error (hereinafter called the defendant), to recover damages for injuries to the said plaintiff, occasioned by the alleged negligence of the defendant. There was a verdict, and judgment thereon, in favor of the plaintiff. From the record brought up by the writ of error sued out by the defendant, it appears that the defendant was a corporation of the state of Pennsylvania, operating certain electric street railways in what was formerly called the city of Allegheny, but what is now a part of the city of Pittsburgh. On the 27th day of November, 1907, the plaintiff was a conductor on a motor car on one of the lines in said city. When he arrived at the end of said line, it became his duty to attach a trailer car, which was standing there, to what was then the front of his car but which would be the rear of his car on the return trip to the city. The motorman, one Conway, having stopped the car a distance of from two and a half to five feet from the trailer car, the plaintiff went between the two cars for the purpose of coupling them, and, standing somewhat to one side and holding the drawhead and pin, one in each hand, made a signal to the motorman to move his car up in order to make the coupling. The plaintiff says that after the signal was given, the car came so quickly that he remembered nothing, except that it caught him and crushed him between it and the trailer. The plaintiff had been for some time running on this particular line, but says that he had never before had Conway as a motorman. Conway testifies that when he received the signal to close up on the trailer, he put on only what is called one notch of power, the least that would serve to move the car. The plaintiff says that from his five years' experience in motor cars, it could not have come as quickly as it did without more than two notches of power. He also says that it was slightly upgrade at that point, and more power would be required on that account. There was testimony of two or three witnesses, who were 1½ or 2 blocks away, that their attention was called to the accident by hearing the crash of the two cars coming together.

The negligence charged by the plaintiff's statement of claim is the primary negligence of the defendant, as master, in employing Conway, the motorman, who, it was alleged, was incompetent, to the knowledge of the defendant, or in retaining him in its employ after it had, or should have had, knowledge of his incompetence. The charge of negligence is not entirely clear or apt in the language employed to express it. The rule of law invoked, however, is the undoubted one, that it is the duty of the master to use due care, that is, the care that would be exercised by an ordinarily prudent man, under the circumstances of the particular case, to select servants competent and fit for the performance of the duties required of them. This care, of course, must have regard to the character of the employment and to the dangers that may result to others, including co-employés, from the lack of such competence or fitness. This, as we have said, is a primary duty of the master, and cannot be delegated by him so as to avoid responsibility for its due performance. While one who enters

the service of another takes, as a risk of his employment, the risk of negligence of a fellow servant, he never assumes the risk of the negligence of the master.

The charge here made, that the injuries suffered by the plaintiff were due to the negligence of the defendant, in employing or retaining in his employ one who was incompetent or unfit for the service required of him, and that such incompetence or unfitness was known, or ought to have been known, to the defendant prior to the accident, must be proved, like every other charge of negligence, by a preponderance of testimony to the satisfaction of the tribunal trying the same. The burden of proof, of course, is always on the plaintiff.

After the conclusion of the testimony, counsel for the defense asked for binding instructions that, under all the evidence, the verdict should be for the defense, and, after verdict in favor of the plaintiff, made a motion for judgment non obstante veredicto, under the Pennsylvania statute. Assignments of error to the refusal of the court to allow these motions were duly filed.

After a careful reading of the testimony, we think that these assignments should not be allowed. The question was a close one, but we think there was evidence to be submitted to the jury, tending to show the incompetence and unfitness of the motorman for the position in which he was placed; also tending to show that the defendant had knowledge, or might have had knowledge, by due inquiry, of such incompetence and unfitness; and also evidence tending to show that the action of the motorman, which occasioned the accident, was due to such incompetence and unfitness. As to all three of the points just mentioned, it is incumbent upon the plaintiff to satisfy the jury. We by no means intend to be understood as saying that there was such a preponderance of evidence as should satisfy the jury on this point, or that the jury might not have found that the specific negligence charged against the defendant had not been proved, but merely that there were facts proved in the case from which the jury might, in the exercise of their judgment, infer such negligence, and that the court were therefore justified in submitting, with proper instructions, the question to the jury.

The third specification of error raises the interesting question, whether prior specific acts of alleged negligence on the part of the motorman can be submitted to the jury, in order to establish his incompetency or unfitness. This question is a difficult one, and the decisions of the courts have not been uniform in regard to it. On the one hand, it is held that only evidence of general reputation of incompetency or unfitness, and not knowledge of specific acts of negligence, can be admitted to make a master amenable to the charge of negligence in selecting a servant. "Character," says the Supreme Court of Pennsylvania, in Frazier v. P. R. R., 38 Pa. 104, 80 Am. Dec. 467, "grows out of special acts, but is not proved by them. Indeed special acts do very often indicate frailties or vices that are altogether contrary to the character actually established. * * *. Besides this, ordinary care implies occasional acts of carelessness, for all men are fallible in this respect, and the law demands only the ordinary." This

is true, and the courts constantly make the discrimination, where the question is as to the veracity of a party or witness, between character or reputation and specific acts of falsehood. But it would be unphilosophical and do violence to the common sense and experience of mankind, to say that there may not be repeated specific acts showing incompetence or unfitness in a particular employment, or a continued line of conduct amounting to a habit of negligence in the performance of a given duty, as would render one, with knowledge of such specific acts or such a habit on the part of the person he was about to employ, negligent of his duty to those who should thereafter come within the danger of such incompetence or negligence. But we have no hesitation, where the question is as to negligence of the master in retaining a servant in his employ after he knows, or has reason to know, that he is incompetent or unfit for the service for which he is employed, in holding that previous specific acts of the servant, tending to show incompetence or unfitness on his part, which were or should have been known by the master, are admissible in proof of the master's negligence. The practical application of this proposition requires to be guarded by such instructions from the court as shall make clear the essential difference between mere negligence and incompetency. A man perfectly competent in all respects for the duty he undertakes to perform, may occasionally be negligent, so that one or two specific acts of negligence do not prove incompetence. It must be either shown that the so-called negligent acts were the result of incompetence, or were of such a character and so constantly committed as to constitute a habit of negligence, rendering the servant unfit to be retained in his position, for unfitness, as well as incompetency, is a disqualification for employment. A man may be in the abstract competent for the work in hand; that is, he may be mentally alert, quick of comprehension and understanding, and possessing the requisite experience and skill for the performance of the duty assigned him, but he may be so unfit, by reason of habits of intoxication or reckless carelessness, as to render a master negligent who knowingly employs him.

Keeping in mind these distinctions, we come to consider the specifications of error pertinent thereto. The two specific accidents in which the motorman, Conway, was concerned, and which were adduced to show incompetence on his part, taken by themselves, hardly present sufficient ground for the inference sought to be drawn from them. Their character is principally proved by the motorman himself, and his explanation of the circumstances under which they occurred would seem to exonerate him from responsibility or blame. In one case, he testifies that he ran into the rear of a car which had suddenly stopped by reason of bumping into another car ahead of it. As it was in the early hours of a November morning, and very foggy, he testifies that he could only see ahead as far as his headlight shone, about 15 yards, and that the fog had made the rails so slippery that, by reason thereof, he was unable to stop his own car in time to avoid the collision. In the other case, which happened in the previous September, he testified as follows:

"The Rebecca Street car was going ahead of me, up Preble avenue, and there is a bridge there for the people going up California avenue, and just as his

car was passing, an old man got off the bridge and signaled for the motorman ahead of me to stop the car. It was not a regular stop, and I was coming after him about 50 yards, and before I could stop my car, I slightly touched him."

This is practically the only evidence as to the happening of the two accidents, evidence of which was introduced, not to show negligence, for that would not have been pertinent, but to show incompetence. Standing alone, they do not have probative force in that respect, and should have been withdrawn from the consideration of the jury.

There was, however, other evidence undoubtedly pertinent, as tending to show incompetence. This was the testimony of several of the conductors and motormen who daily congregated, to the number of 30 or 40, in the car barn, to the effect that the reputation of Conway, for competence as a motorman, was bad. This testimony was objected to, on the ground that it was not general reputation and only confined to a class. We think, however, that reputation or character in a special employment or calling, is competently proved—indeed, is best proved, as it exists among those of the same calling. It is the general reputation among those best capable of forming an opinion in regard to the same. This testimony, however, is not conclusive, and should be of such a character as to satisfy the jury that it should have come to the knowledge of the defendant.

Undoubtedly, great weight was added to this evidence of reputation by the admission of the testimony in regard to the previous accidents to which reference has been made, and the court, with entire correctness and fairness, submitted to the jury the general questions as to reputation and as to the facts surrounding the accidents. But our attention has been called to certain language used by the learned judge of the court below, as set forth in the last four assignments of error. Speaking of the first of the two prior accidents, the learned judge used this language:

"Would you, if you were trying that case, say that the motorman was guilty of negligence, or was it the result of his incompetency, which would be the same thing?"

This, of course, is erroneous, in view of the distinctions which we have heretofore endeavored to point out. A merely negligent act, and an act which is the result of incompetence, are not the same thing. As we have already pointed out, he may have been entirely competent, and yet have committed an act of negligence. In speaking of the second accident, this language is used:

"Was he incompetent in the operation of his car on Preble avenue? Was his conduct negligent? Now you see you must determine the fact of this accident as bearing upon the question of incompetency. Of course, if he could have avoided either of these accidents with the skill that a motorman is supposed to have, in running a car, then it would be the result of his negligence, and it would be evidence of his incompetency, so, you see that you are to determine that."

The use of this language was evidently the result of inadvertence on the part of the trial judge, but this inadvertence, in the course of the delivery of an oral charge, could hardly fail to confuse in the minds of the jury the distinction that exists between incompetence and the mere

negligence of one who is competent, and tended to give a probative force to the occurrence of these prior accidents, to which they were not properly entitled. Special care is required in a case like the one at bar, to avoid possible confusion in this regard, by fully explaining to the jury the distinction to which we have adverted.

For the reasons stated, the judgment below is reversed, and a venire de novo ordered.