Argued December 7, 1938; reversed February 15, 1939

## GUEDON *v.* ROONEY ET AL.

(87 P. (2d) 209)

*J. A. McKeown,* of Marshfield (Liljeqvist, Swanton & McKeown, of Marshfield, on the brief), for appellant Rooney.

*William E. Walsh,* of Marshfield, on the brief, for appellant Wilson.

*J. B. Bedingfield,* of Marshfield (David J. Grant, Jr., of Marshfield, on the brief), for respondent.

BAILEY, J. This action was brought by Della I. Guedon against P. J. Rooney, doing business under the assumed name and style of P. J. Rooney Auto Company, and Norman Wilson, for damages on account of injuries suffered by the plaintiff in an automobile collision. From a judgment in favor of the plaintiff against both of them, the defendants prosecute this appeal.

The accident out of which the injuries arose occurred on September 23, 1936, between the hours of three and four p. m., at the intersection of Sherman and Connecticut avenues in North Bend, Oregon. Sherman avenue runs in a north and south direction through the center of that city and is a main traveled thoroughfare, part of the Coast highway. It is eighty-two feet wide, paved fifty-two feet of its width, with a painted line in the middle of the pavement. Connecticut avenue runs in an east and west direction and intersects Sherman avenue at right angles.

At the time of the mishap, the car in which the plaintiff was riding was being driven by her husband and was proceeding in a southerly direction along Sherman avenue. Shortly before the Guedon car reached the intersection of Connecticut and Sherman avenues, the defendant Wilson started his car, which had been parked on the east side of Sherman avenue, fifty to one hundred feet south of the intersection, and drove it in a northerly direction to the intersection, where he turned sharply to the left on Connecticut avenue, across the center line of Sherman avenue and directly in front of the Guedon car, which had already entered the intersection. The front right side of the car in which the plaintiff was riding struck the right side of the car being driven by Wilson. The plaintiff suffered severe injuries to her right foot and heel.

According to the evidence of both Mr. and Mrs. Guedon, they had not observed the car which Wilson was driving until it appeared immediately in front of them some ten or twelve feet distant. There were no other automobiles being driven at that time on either of the intersecting streets in the immediate vicinity of the place of the accident.

The automobile driven by Wilson was owned by the defendant Rooney. The evidence is sufficient to support the allegations of the complaint that Wilson was at the time of the accident in the employ of Rooney and then acting within the scope of his employment. On the morning of September 23, 1936, the day of the mishap, Wilson drove his car from Marshfield, where Rooney's place of business was located, to North Bend, and left it parked on the east side of Sherman avenue south of the intersection of that street and Connecticut avenue. He then proceeded to Lakeside, some fifteen miles north on the Coast highway, in another

automobile. During the morning he drank some beer and after reaching Lakeside he bought a bottle of gin and had one or more drinks from it. Upon his return to North Bend and immediately before the accident he had several additional drinks of intoxicating liquor. From the evidence in the record the jury could have found that immediately prior to and at the time of the collision Wilson was under the influence of liquor to such a degree that he was unable to walk steadily.

The complaint alleges that Wilson was (1) the agent and employe of the defendant Rooney at the time of the accident and was driving and operating Rooney's automobile within the scope of his employment; that (2) on the day of the accident "Wilson was a reckless, incompetent, careless and unsafe driver and in the operation of an automobile was likely to cause injuries to others in the use of said automobile, all of which said defendant Rooney knew or by the exercise of ordinary care and caution could have known", and that with such knowledge the defendant Rooney wrongfully, carelessly and negligently allowed and permitted Wilson to operate Rooney's automobile "and to wrongfully, unlawfully, carelessly and negligently inflict damage and injuries upon the plaintiff"; and that (3) on September 23, 1936, and for many months prior thereto Wilson "was addicted to the use of intoxicating liquors and did frequently become under the influence of intoxicating liquors and frequently while under the influence of intoxicating liquors did negligently, carelessly, unlawfully and recklessly drive motor vehicles on the highways of the state of Oregon so as to greatly endanger the lives and property of persons upon such highways, all of which the defendant P. J. Rooney knew or in the exercise of reasonable care should have known."

The complaint alleges with much detail the specific acts of negligence charged against the defendants, which, in view of the issues here involved, need not be set forth in this opinion.

■ The appellants' opening brief contains sixty-one assignments of error. Many of them relate to the refusal of the trial court to give certain instructions requested by the defendants, and others to exceptions to some three instructions which were given by the court. Sixty instructions, covering twenty-one pages of the transcript, were requested by the defendant Rooney. We are unable to understand why so much space in appellants' brief is given to these assignments of error, inasmuch as it is not pointed out in what particulars the requested instructions which were not given "stated the law more clearly than the court gave it" or in what respects the instructions given by the court and excepted to were erroneous. From a comparison of a number of the requested instructions with those given by the court we believe that the subject matter of the requested instructions in so far as such instructions were relevant to the issues involved was fairly and properly covered by the court's charge to the jury.

■ We are also of the opinion that there is no merit in the assignment of error based on the refusal of the court to grant the defendants' motion for involuntary nonsuit.

The more serious aspect of this appeal concerns the admission of testimony, over the objection of the defendants, relating to the careless and reckless driving of automobiles by Wilson and his driving automobiles while intoxicated, on occasions other than the time of the accident, and the refusal of the court to grant a mistrial because of the admission of such testimony. This evidence was offered on behalf of the plaintiff

and admitted by the court on the theory that the defendant Rooney was negligent in permitting Wilson, as bailee, to operate Rooney's automobile on the highways with knowledge that Wilson was not a fit and proper person to be entrusted with a car because of his careless and reckless driving and his driving while intoxicated.

Frank English, a police officer of Marshfield, was called as a witness on behalf of the plaintiff and over the objection of the defendants testified as follows:

"Q. From what you have observed and seen of Mr. Wilson's driving an automobile, state whether or not he is a careful driver or not a careful driver. * * * A. All that I have ever seen him driving, he was more or less reckless.

"Q. Now, I want you to state whether or not during that same time, up to and prior to September 23, 1936, you observed him so as to know whether or not he was addicted to the excessive use of intoxicating liquor. A. Yes. Q. What observation or what opportunities did you have to observe that? A. While I was on the police force working, I have seen him at beer places and on the street when he had too much. Q. When he was under the influence of liquor? A. Yes.

"Q. Was the defendant addicted to excessive use, was he up to September 23, 1936, addicted to the excessive use of intoxicating liquor? * * * A. Yes. Q. Now, during that same time, state whether or not you observed the defendant Wilson while in an intoxicated condition or under the influence of liquor, using and driving automobiles. * * * A. Yes, I have. Q. What did you observe? * * * A. I have noticed him several times driving a car, under the influence of liquor when he was driving a car, in a reckless manner.

"Q. Where was he at these times when you observed him in this intoxicated condition?"

In sustaining an objection to this last question, the court said: "The court will not permit you to go into specific instances. Cross-examination can do it if they desire, but you can't do it, Mr. Bedingfield, there are too many collateral issues involved."

The direct examination thus proceeded:

"Q. State whether or not these things that you observed were in public places around Marshfield. A. They were—

 \* \* \* \* \*

"Q. State whether or not any of these things that you have observed occurred in the vicinity of Mr. Rooney's automobile store prior to September 25, 1936. \* \* \* A. Not to my knowledge."

Mr. English then testified that he had not to his knowledge talked to Mr. Rooney concerning the manner of Wilson's driving, and that he did not know that the matter had come to Mr. Rooney's attention.

All this testimony went in over the objection of the defendants, and at the conclusion of English's testimony a motion was made on behalf of the defendants to strike all of it from the record as incompetent, irrelevant, immaterial, too remote, with no tendency to prove any of the issues of the case, and on the further ground as to Rooney that it was not binding upon him. This motion was denied and exception allowed.

Jarley Pete, one of the plaintiff's witnesses, testified that he had worked for the defendant Rooney for about a year prior to the middle of March, 1936, and that while he was so employed Wilson was also working for Mr. Rooney; that during that time he noticed Wilson and Rooney together several times when they were drinking liquor; and that "they always treated the

customers nice'' and sometimes both Rooney and Wilson would drink with them. The drinking parties usually started when friends came in, Pete stated, and ''sometimes carried on pretty late, sometimes I would close up and go home and leave them there, and sometimes they would leave before I would, and that is the usual thing that goes on.'' During such drinking parties ''there were times when there would be a little horse play going on around the place, naturally feeling it a little bit, drinking, and a lot of arguing, loud talk and running back and forth after liquor or chasers.'' The ''chasers'' were generally orange juice. There were times, according to Pete's testimony, when Wilson and Rooney ''evidently were under the influence of liquor''. When asked how often that occurred, he answered: ''You couldn't say exactly when it was, say every day or every week or anything like that, but at different times, it happened several times, they would vary in between, when there was some reason for some one to start it.'' There were occasions, according to Pete, when Rooney and Wilson were together and both were under the influence of liquor. When parties were in progress and more liquor was needed, Rooney would sometimes send Pete and sometimes send Wilson in a demonstrator car, to the liquor store to buy more liquor.

The defendant Rooney was called by the plaintiff and testified that to his knowledge Wilson was not addicted to the excessive use of intoxicating liquor, and that he knew that Wilson would drink liquor but that he did not, to Rooney's knowledge, take many drinks. Liquor was kept in the Rooney place of business but Wilson ''only had a drink once in a great while,'' and to his knowledge Wilson did not drink liquor regularly.

When objections were made to admission of the

foregoing testimony, the court several times stated to the jury that the testimony was not offered for the purpose of proving that Norman Wilson was under the influence of liquor or was operating the automobile recklessly "on the particular occasion of this accident." "One of the contentions stated in the pleadings of the plaintiff," the court said to the jury, "which plaintiff is permitted to establish, to attempt to establish, by evidence, is, first, that Wilson was a reckless driver, and that Mr. Rooney had knowledge that he was a reckless driver and thereafter permitted him to drive Rooney's care, that is the theory stated in the complaint which the court is permitting the plaintiff to attempt by evidence to present to you. Whether or not it will be sufficient to permit it to be submitted to you for decision is a matter which the court has not yet determined."

In addition to the foregoing testimony the plaintiff in her case in chief called as a witness George Sorenson, chief of police of North Bend, who testified that he was at the scene of the accident about forty minutes after it happened, and that he obtained the license number of the car driven by Wilson and then called upon Rooney at his place of business. When asked what Rooney said when he saw him, the witness answered: "I asked him if Norm had been around and he said no, and I had this license number and I says 'Is this your car that he was driving?' And I handed it to him and he said, 'What, has that — been in trouble again?'" This was stricken out on the motion of defendants' counsel on the ground, as stated by the court, that there was "no presumption that being in trouble implies negligence or incapacity to drive", and the jury was instructed to disregard the answer of the witness.

At the close of plaintiff's testimony counsel for plaintiff stated that plaintiff had no other testimony on the question of Wilson's recklessness or Rooney's knowledge of his recklessness, and therefore the plaintiff consented to the allowance of the defendants' motion "to strike the answer of the witness English that from his observation of the driving of Norman Wilson that he was reckless." Thereupon counsel for defendants, acting upon this statement of plaintiff's counsel, moved for a mistrial on the ground that the testimony which had been admitted was "highly prejudicial to the defendants".

This motion for a mistrial followed several other motions for mistrial made by the defendants, one of which motions was made after the striking of the answer of the witness Sorenson. That motion, as were the previous motions for mistrial, was denied by the court. The defendants then made a motion for a nonsuit and when that was denied by the court, plaintiff asked permission to reopen her case for the purpose of recalling Rooney to inquire further from him "about the reckless proclivities of Norman Wilson in driving an automobile, whether he knew that he was reckless and careless." Upon the granting of this motion Rooney was recalled as a witness and testified as follows in response to questioning by plaintiff's counsel:

"Q. State whether or not on and immediately prior to September 23, 1936, you knew how Norman Wilson operated automobiles. * * * A. He operated them all right as far as I could see. Q. Didn't you know that as a matter of fact on that day that Wilson was a—that Wilson had, was, a driver who was constantly speeding, cutting corners, driving into other automobiles and hitting people? * * * A. No, nobody ever told me about it. Q. Did you learn about it in any other way? * * * A. No. Q. Do you mean to say that you never

heard of any occasions where Norman Wilson prior to that time had admitted being reckless in the operation of automobiles? * * * A. No, not to my knowledge. Q. What do you mean? A. I didn't know anything about any accidents he had previous to that. Q. You didn't know of any accidents? A. Not him directly, no.

"Q. Did you know of any time when he had been reckless in driving or when he had said he had been reckless? * * * A. No. Q. Didn't anybody ever tell you that? * * * A. Nobody ever told me. I heard Frank English say—well, he never called me up to tell me anything about it.

"Q. Didn't you know of Norman Wilson admitting and pleading guilty to reckless driving? * * * Let me make my question clear, on September 23, 1936, and immediately prior thereto did you not then know that Wilson had previously admitted and pleaded guilty to a charge of reckless driving? * * * A. I don't believe I had knowledge of it. Q. Did you have any information concerning it? * * * A. No.

* * * * *

"Q. Then, your testimony is that on September 23, 1936, and immediately prior thereto you had no knowledge whatever of Norman Wilson having ever been reckless or careless in the operation of automobiles?

"The Court: No, the question is whether he knew of his being a reckless driver.

"A. I had no knowledge of his being a reckless driver. If he was a reckless driver and I thought so he wouldn't—I wouldn't have him working for me.

"Q. Let me ask you this, didn't you know about the time when—first, isn't it true that Norman Wilson drove a new Studebaker through the fence between Marshfield and North Bend, off the highway and through a fence, over there close to the Mountain States Power Company plant?"

This was objected to and the objection sustained, and the court said: "I have permitted you to inquire

as to the general knowledge of alleged recklessness or any admission of alleged recklessness."

A motion was made by the defendants to strike this testimony of the defendant Rooney, on the ground that the same was "incompetent, irrelevant, immaterial in attempting to prove matters too remote, proving no issue in the case and attempting to drag into the case collateral issues." The following discussion between the court and counsel for defendants was then had:

"The Court: Do you claim that any answer given was prejudicial to you?

"Mr. McKeown: The questions asked were prejudicial.

"The Court: The answers were all in the negative. The motion is denied."

The defendants then moved again for a mistrial and renewed their motion for a nonsuit, both of which the court denied. The jury was then advised by the court that the defendants had moved that "the evidence of Officer English concerning the alleged general propensities of the defendant Wilson as to reckless driving" be stricken from the record, and that the plaintiff consented thereto, and the court thereupon ordered such testimony to be stricken and told the jury "wholly" to "disregard it". The trial judge further stated to the jury that he was not ruling at that time "as to the existence or admissibility or effect of evidence, if any, on the question of whether Wilson was or was not addicted to the excessive use of alcoholic liquor or whether such addiction, if any, involved any unreasonable risk of bodily harm to others if Wilson was permitted to drive a car or whether Rooney knew or should have known, if Wilson drove, of such risk, if any."

At the close of the testimony the court instructed the jury that the plaintiff still relied upon the theory that "Wilson was the servant of Rooney", and in addition upon the different theory which the court was withdrawing from the jury's consideration. "The first claim," the court stated, "the one which I have just described, rests on the alleged relation of master and servant. The second claim, which I am taking away from your consideration, was the claim that even if Wilson was not the employe and servant of Rooney, that still Rooney might be held liable under certain circumstances."

The court further instructed the jury thus:

"Now, there is no evidence in this case on which you could hold Rooney unless Wilson was Rooney's servant and not an independent contractor. The plaintiff claimed that Wilson was in fact a reckless driver and was dangerous by reason of addiction to liquor. That is, the claim was that he was in general such a person having a propensity to reckless driving that the defendant Rooney knew of said alleged condition.

"This claim of the plaintiff is withdrawn from your consideration and you will therefore wholly disregard all evidence as to alleged general reckless character, whether by reason of addiction to liquor or otherwise. There is no sufficient evidence, there is no evidence sufficient for your consideration that the defendant Rooney had knowledge of any such condition, if it existed, and all evidence, if any, that tended to show the same is to be disregarded."

The three theories stated in the complaint on which plaintiff sought recovery against the defendant Rooney were not set forth as separate causes of action, but were joined as one cause of action. No motion, however, was made by the defendant against this manner of

pleading, nor is it contended that it was not proper to state the plaintiff's basis of recovery on alternative grounds.

The defendant Rooney did not admit in his answer, nor does he now admit, that Wilson was in his employ at the time of the accident. He contended in the trial court, and now argues on this appeal, that Wilson was an independent contractor. The defendant Wilson, on the other hand, admitted in his answer that he was at the time of the accident driving the defendant Rooney's automobile as the agent and employee of Rooney, and was at that time "acting in the business of the owner in the course and within the scope of his employment and in the furthering of the business of said defendant, P. J. Rooney, as his agent and employe."

■ The general rule that the owner of an automobile is not liable for the negligence of one to whom the automobile is loaned has no application in cases of the owner's lending an automobile to another with knowledge that the latter is an incompetent, reckless or careless driver and is likely to cause injury to others in the operation of the motor vehicle. In such cases, the owner is held liable for injuries caused by the borrower's negligence, on the ground of the owner's negligence in entrusting the automobile to a person who, he knows, is apt to cause injury to another in its use: 4 Berry on Automobiles, 7th Ed., § 4.406; *Rocca v. Steinmetz*, 61 Cal. App. 102, 214 P. 257; *Priestly v. Skourup*, 142 Kans. 127, 45 P. (2d) 852, 100 A. L. R. 916; *Mitchell v. Churches*, 119 Wash. 547, 206 P. 6, 36 A. L. R. 1132; *Levy v. McMullen*, 169 Miss. 659, 152 So. 899; *Crowell v. Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *Elliott v. Harding*, 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128.

On the question of a driver's incompetency due to intoxication or habitual drinking of intoxicating liquor, and the liability of the owner of a car who lends it to such a driver, see 1 Bailey on Personal Injuries, 2d Ed., § 340, p. 890; *Crowell v. Duncan*, supra; *Mitchell v. Churches*, supra; and *Slaughter v. Holsomback*, 166 Miss. 643, 147 So. 318.

■ The questions propounded by plaintiff's counsel to the officer, English, as to whether Wilson .was a careful driver, and the officer's answers thereto that he had observed Wilson driving a car recklessly and that he had also observed him driving recklessly while under the influence of liquor were objected to on the ground, among others, that the questions asked called for the conclusions of the witness and the answers thereto were incompetent because opinion evidence. Although there are a few adjudications which hold that a witness may, when the question directly involved is that of the manner in which an operator drove a car, express his opinion as to whether the car was being driven in a reckless or careless manner, nevertheless the overwhelming weight of authority is to the contrary, for the reason that it is the duty of the jury and not of the witness to draw inferences and reach conclusions from the facts presented: *Jackson v. Vaughn*, 204 Ala. 543, 86 So. 469; *Winski v. Clegg*, 81 Ind. App. 560, 142 N. E. 130; *Johnson v. Caughren*, 55 Wash. 125, 104 P. 170, 19 Ann. Cas. 1148; *Norfolk Southern R. Co. v. Banks*, 141 Va. 715, 126 S. E. 662; *Marks v. Columbia County Lumber Co.*, 77 Or. 22, 149 P. 1041, Ann. Cas. 1917A, 306; 5 Berry on Automobiles, 7th Ed., § 5.301; 9 Blashfield's Cyc. Automobile L. & P., § 6187; 22 C. J., Evidence, § 600; 3 Jones, Commentaries on Evidence, 2d Ed., § 1249.

In 6 Thompson, Commentaries on the Law of Negligence, § 7747, the rule concerning opinion testimony is thus set forth:

"It may be stated as a general rule that, if the facts of any particular inquiry can be so placed before the jury that, as men of ordinary intelligence, they can fully understand the matter and draw the proper inferences and conclusions therefrom, the opinions and conclusions of a witness, whether an expert or a non-expert, should not be received. In conformity with this rule a witness will not be allowed to state his opinion as to whether an act was *carefully or negligently done;* nor whether the injured party was *acting within the line of his duty* at the time of receiving an injury; nor as to the *safety of a particular appliance or place of work,* where the same can be described and easily understood; nor as to whether a *highway was safe, or defective, or dangerous,* at the place where an accident happened; . . ."

This court, in *State v. Barrett,* 33 Or. 194, 54 P. 807, in discussing the admissibility of opinion evidence, said:

"As a general rule, a witness must testify to facts, and not conclusions or opinions. It is the duty of the jury, and not the witness, to draw inferences from the evidence, and form opinions from the facts presented. The cases in which the opinions of witnesses are allowed constitute exceptions to this rule, founded on the ground of necessity, because the facts can not be presented or depicted to the jury precisely as they appeared to the witness, and it is impracticable, from the nature of the subject, for him to relate the facts without supplementing their description with his conclusions; * * * But the books all agree that such opinion evidence is never admissible if all the pertinent facts can be sufficiently described and detailed to the jury so as to enable it to draw its own inferences and conclusions therefrom."

■■ In the instant case it is sought to hold the defendants liable for the injuries suffered by the plaintiff on the ground of the reckless operation of the defendant Rooney's car by the defendant Wilson. No one would seriously contend that it would be competent for a witness to testify that at the time of the accident in which the plaintiff was injured Rooney's automobile was being driven carelessly and recklessly. So, in instances in which it is sought to charge the owner of the car with negligence in permitting his automobile to be driven by one known to him to be reckless, the conclusions of witnesses as to the manner of that driver's customary operation of a car are likewise inadmissible. It is for the jury to determine, from facts placed before it, whether the driver was reckless and incompetent in operating a car at the time of the accident or at other times relevant to the issues involved, and opinion evidence on that subject is not admissible. It was therefore error for the trial court to permit English to state his conclusions as to the manner of Wilson's operation of an automobile at times other than the moment of the collision.

■■ What might seem to be contrary to the general rule above stated yet comes within the exception noted in *State v. Barrett,* supra, is the permitting of a witness to state whether the person whose condition is questioned was intoxicated, and to testify to the extent of such intoxication and whether that person had been drinking or was just recovering from a state of drunkenness, if such witness satisfactorily shows that he had opportunity to observe and did observe that person's condition: 22 C. J., Evidence, § 694 and authorities there cited. See also 3 Jones, Commentaries on Evidence, § 1249. The trial court did not commit error, therefore, in allowing English to state that he had observed Wil-

son operating a car while under the influence of liquor. We do not mean to intimate by this that there was sufficient testimony in the record to warrant the trial court's submitting to the jury the question of whether Wilson was accustomed to operate motor vehicles while under the influence of liquor, within the knowledge of the defendant Rooney.

The next problem with which we are confronted is the question of the character of testimony admissible to prove the incompetence of Wilson to operate an automobile. The circuit court excluded evidence relating to specific acts of recklessness or incompetency on Wilson's part in driving motor vehicles on public highways. There appears to be a scarcity of authorities on this subject with particular reference to automobile drivers. There are, however, many decisions and textbook treatises touching upon the manner of proving the incompetency or recklessness of servants in cases wherein a principal is sought to be charged with negligence in employing or retaining a careless or incompetent servant through whose negligence injury has resulted to a fellow servant. In those cases the great weight of authority is to the effect that proof of such incompetency or recklessness must be made by evidence of specific acts of negligence on the part of the servant claimed to be incompetent, and not by the general reputation of such servant for recklessness or incompetency. In discussing this matter, the court said in the case of *Young v. Fresno Flume & Irrigation Co.*, 24 Cal. App. 286, 141 P. 29:

"The proof as to reputation could only be admissible for the purpose of imputing to the defendant knowledge of a fact which had become a matter of general repute, and hence could not be legally admitted until the foundation had been laid in proof of past acts of

carelessness, which would in itself be sufficient to predicate a finding of the fact of incompetency upon; nor could the evidence of his reputation be admissible to prove the fact of incompetency; otherwise a defendant might be held responsible for its failure or refusal to discharge a perfectly competent but otherwise unpopular servant. It would thus seem to be clear, both by reason and precedent, that the court committed error in the admission of the testimony as to the previous reputation of Barney Lynch for carelessness, in the absence of a sufficient showing of the fact of his prior incompetency."

One of the authorities cited in support of the above statement is *Park v. N. Y. Central & H. R. R. Co.,* 155 N. Y. 215, 49 N. E. 674, 63 Am. St. Rep. 663, wherein the court observed:

"We are aware that in some states the courts have permitted incompetency of servants to be shown by general reputation, but we have never gone to that extent in this state. It appears to us that the safer and better rule is to require incompetency to be shown by the specific acts of the servant, and then that the master knew or ought to have known of such incompetency. The latter may be shown by evidence tending to establish that such incompetency was generally known in the community."

See also, in this connection: *McCarty v. Ritch,* 59 App. Div. 145, 69 N. Y. Supp. 129; *Lambrecht v. Pfizer,* 49 App. Div. 82, 63 N. Y. Supp. 591; *Dossett v. St. Paul & Tacoma Lumber Co.,* 40 Wash. 276, 82 P. 273; *Moering v. Falk Co.,* 141 Wis. 294, 124 N. W. 402, 18 Ann. Cas. 926; *Worley v. Spreckels Bros. Commercial Co.,* 163 Cal. 60, 124 P. 697; *Robbins v. Lewiston, Etc., St. Ry.,* 107 Me. 42, 77 Atl. 537, Ann. Cas. 1912C, 92, 30 L. R. A. (N. S.) 109; *Pittsburgh, Fort Wayne & Chicago Ry. Co. v. Ruby,* 38 Ind. 294, 10 Am. Rep. 111; *Pittsburgh Rys. Co. v. Thomas,* 174 F. 591, 594.

In 3 Jones on Evidence, 3d Ed. § 165, it is stated that:

"In an action where it is claimed that the defendant is liable on account of the negligence of a servant, it is not relevant to show specific acts of negligence on the part of such servant not connected with the act in question. But when the general fitness and capacity of a servant are involved, his prior acts and conduct on specific occasions are relevant when it is proven that the principal had knowledge of such acts and when the principal is charged with negligence in retaining the servant."

See also: 1 Bailey on Personal Injuries, 2d Ed., § 340; 3 Nichols, Applied Evidence, § 20, p. 2557; 39 C. J., Master and Servant, § 1249.

The same rule has been applied in the only case that has come to our attention involving the liability of the owner of an automobile who permits it to be operated by a reckless driver, wherein the character of testimony necessary to prove the incompetency of the driver is the subject of judicial inquiry: *Clark v. Stewart,* 126 Ohio 263, 185 N. E. 71. In the opinion therein the court said: "It is insisted that specific instances are incompetent as bearing upon the question of a reckless, negligent course of conduct. The authorities are without number that such questions are germane: *Pittsburgh Rys. Co. v. Thomas* (C. C. A.), 174 F. 591; *First National Bank of Montgomery v. Chandler,* 144 Ala. 286, 39 So. 822, 113 Am. St. Rep. 39; *Fletcher v. Baltimore & Potomac Rd. Co.,* 168 U. S. 135, 18 S. Ct. 35, 42 L. Ed. 411."

 In cases in which it is sought to hold the owner of an automobile liable on the theory that his negligence in lending a car to an incompetent driver was in fact the cause of injury to the plaintiff, the better rule is

to require such incompetence of the driver to be shown by specific acts of carelessness and recklessness committed by him. The car owner's knowledge of the driver's incompetence may be shown either by evidence that he in fact knew of such acts or by evidence tending to show that the driver's incompetence was generally known in the community. In this connection, it must be borne in mind, as stated in the case of *Pittsburgh Rys. Co. v. Thomas,* supra, that "a man perfectly competent . . . may occasionally be negligent, so that one or two specific acts of negligence do not prove incompetence. It must be either shown that the so-called negligent acts were the result of incompetence, or were of such a character and so constantly committed as to constitute a habit of negligence." And in *Davis v. Shaw,* — La. App. — [1932], 142 So. 301, it was pointed out that to hold the owner of an automobile liable to a third person for damages caused by one to whom his car had been loaned, "merely on the ground that the owner had knowledge that such user had previously had an accident while driving an automobile or had on some previous occasion, been vaguely and generally accused of speeding and recklessness, would unjustly deprive both the owner and the non-owner user of such car, of pleasure, recreation, and the benefits to which every citizen of this country is accustomed, if not in a sense entitled". The court in the latter case further noted that very few automobile drivers "can be shown to have neither had an accident" nor to have exceeded the speed limit in driving on public highways.

■ The exclusion by the trial court of evidence of specific acts of negligence on the part of Wilson was undoubtedly due largely to objections made by the

defendants to that character of testimony, and the defendants are not in a position to predicate error on the ruling of the court in that respect. Since, however, the judgment appealed from must be reversed and the question of the manner of proving such incompetence will probably again be raised on a retrial of the case, we have deemed it appropriate to indicate here our views on the subject.

The one matter remaining to be considered is the predication of error, in numerous assignments, based on the refusal of the court to grant defendants' motion to discharge the jury and declare a mistrial. The trial of the case began on Friday, December 10, 1937. The testimony of English was introduced on Saturday, at which time the court denied the defendants' motion to strike it from the record; and it was not until Monday, December 13, after several other witnesses had testified on that date, that the court, at plaintiff's instance, struck that part of English's testimony that referred to Wilson's recklessness.

The direct examination of the defendant Rooney by the plaintiff does not appear to have been stricken out by the court at all, nor does it appear that the jury was instructed to disregard his testimony so elicited, otherwise than inferentially by the instruction hereinabove quoted.

In view of the entire record we are strongly of the opinion that a mistrial should have been ordered by the circuit court. In the first place, the court committed error in permitting English to give in evidence his conclusion as to the manner in which Wilson was driving. Furthermore, the inferences conveyed to the jury on the extended direct examination of Rooney by the plaintiff, when he was recalled to the stand, were extremely prejudicial. The statements of the annotator

in the A. L. R. notes to *Paul v. Drown*, 108 Vt. 458, 189 Atl. 144, 109 A. L. R. 1085, are peculiarly appropriate as applied to that examination of Rooney:

"Improper questions may be prejudicial in various ways, including the following: They may plainly convey information excluded by the rules of evidence; may hint at the existence of significant though inadmissible facts, with or without a suggestion as to their exact nature; may, by the assumptions therein contained, and notwithstanding the answers being prevented, impress upon the jury, by a mere show of proof, matters which are not admissible in evidence and which perhaps could not be proved, as inferred, even if opportunity were afforded; and may, by reason of the objections made, emphasize the facts suggested more effectively than might be done by answers admitted without objection.

"It seems to be the invariable quality of questions the asking of which may require a reversal that in themselves, and without any answers made, they call to the attention of, or suggest to, the jury some fact or claim prejudicial to the opposite party and concerning which counsel has no right to inquire."

The jury might well have believed from the questions asked Rooney that Wilson was "constantly speeding, cutting corners, driving into other automobiles and hitting people"; that Wilson had at prior times admitted being reckless in the operation of automobiles; that he had had numerous accidents; and that he had been arrested and had pleaded guilty to a charge of reckless driving. We do not believe that any admonition of the court to disregard such questions and answers, especially when not given until some days after the questions were asked and the answers received in evidence, would completely nullify the damaging effect of such evidence. Nor does the fact that Rooney's answers to the questions put to him were in the negative palliate the effect of the inferences conveyed to the

jury by the nature of the questions: *Stoskoff v. Wicklund*, 49 N. D. 708, 193 N. W. 312; *Burbank v. McIntyre*, 135 Cal. App. 482, 27 P. (2d) 400; *Tanis v. Eding*, 274 Mich. 288, 264 N. W. 375.

We are not unmindful of the rule that wide discretion is vested in the trial court in deciding whether a mistrial shall be declared. That discretion, however, is not absolute. No general rule, it is true, can be laid down as to what specific set of circumstances will result in a mistrial. We are of the opinion, from all the facts in the case before us, that the defendants did not have a fair trial. The evidence as to the actual cause of the collision between the automobile driven by plaintiff's husband and the car driven by Wilson leaves some doubt as to whose negligence was responsible for the accident. The complaint demanded judgment for $10,000 general damages and $513.64 special damages. The jury returned a verdict for plaintiff in the sum of $9,346.64. It cannot be said that in arriving at the amount of the verdict the jurors were not influenced by the prejudicial evidence to which we have hereinbefore specifically directed attention.

The judgment appealed from is reversed and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

RAND, C. J., and BEAN and LUSK, JJ., concur.