Submitted on briefs August 9, reversed September 10, petition for
rehearing denied October 18, 1973

VAN ET AL, *Respondents, v.* VAN, *Appellant.*

513 P2d 1205

Fred A. Granata, Portland, for appellant.

Virginia R. Renwick, Helen F. Althaus and Renwick, Althaus & Bishop, Tigard, for respondents.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

SCHWAB, C. J.

This is an appeal from a finding of incompetency and the appointment of a permanent guardian of the person and estate of the respondent by the Clackamas County Circuit Court at a hearing on November 6, 1972; a temporary guardian had previously been appointed on September 12, 1972. The basis for the finding of incompetency was a factual determination that the respondent, now approximately 60 years old, was a chronic alcoholic and was thus unable, unassisted, to properly manage and take care of herself and her property. *See,* ORS 126.006 (3).[1]

An appeal of a matter of this kind is tried anew upon the record by this court. ORS 111.205; ORS

---

[1] ORS 126.006 (3):

"'Incompetent' includes any person who, by reason of mental illness, mental deficiency, advanced age, disease, weakness of mind or any other cause, is unable unassisted to properly manage and take care of himself or his property."

19.125. *See, Stangier v. Stangier,* 245 Or 236, 237, 421 P2d 693 (1966). The procedure to be followed in reviews de novo was stated in *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 187, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971):

> "* * * [I]n Oregon a de novo review is a trial anew in the fullest sense, with the findings of the trial court, subject to one exception, being given no weight. This exception has been enunciated in terms of giving 'great weight' to the tribunal (usually the trial judge) who had the opportunity to see and hear the witnesses and thus be better able to weigh their credibility on disputed issues of fact * * *."

The petitioners herein are two sons of the respondent. Both sons testified that the respondent drank excessively and attributed a series of hospitalizations[2] over the years to this excessive drinking. One son also stated that he had paid several small overdue bills of the respondent. A daughter testified that the respondent had been inebriated during one visit and that she had found bottles of vodka both on her mother's person and about her apartment. Other relatives of the respondent also testified that respondent had an alcohol problem and related incidents to support this contention. The petitioners presented no medical testimony.

The respondent presented a friend of long standing who testified as to Mrs. Van's neat and tidy physical appearance during frequent visits to her apartment. A nurse at the hospital at which the respondent was confined at the time of this hearing favorably discussed the respondent's activities in the hospital. The trust officer of the bank managing Mrs.

---

[2] No hospital records were introduced.

Van's agency account noted that although she had ultimate control of the assets, she had made no unreasonable withdrawals over the preceding 21 years. The respondent herself testified that she had no alcohol problem and described in some detail her financial situation. She denied most of the factual allegations of the petitioners. She also presented no medical testimony.

■ An overriding consideration in our evaluation is the presumption of competency as explained in *First Christian Church v. McReynolds,* 194 Or 68, 74, 241 P2d 135 (1952):

> " 'It is well settled that the law will presume sanity rather than insanity, competency rather than incompetency; it will presume that every man is sane and fully competent until satisfactory proof to the contrary is presented [28 Am Jur, Insane and Other Incompetent Persons 751, § 121] * * *.' "

Our examination of the record in this case leads us to the conclusion that the presumption of competency has not been overcome.

■ The legislative history of ORS 126.006 (3), n 1, supra, suggests that the statute may not have been intended to include chronic alcoholism as a basis for a finding of incompetency. One source of the statute is the Model Probate Code 190, § 196 (1946), which specifically includes habitual drunkenness as a basis for a finding of incompetency. Yet, the Guardianship and Conservatorship Law Revision Advisory Committee to the Legislative Counsel Committee, in its discussions of the proposed ORS 126.006 (3), did not adopt such a position. *Cf.,* Minutes of Advisory Committee, June 30, 1960. This may indicate a legislative intent not to include chronic alcoholism as a basis for

an incompetency ruling. However, we need not decide this, for even assuming that chronic alcoholism can support a finding of incompetency, the conclusion that respondent was a chronic alcoholic is not supported by this record.

■ Chronic alcoholism is defined in Stedman's Medical Dictionary 47 (2d Unabridged Lawyers' Ed 1966), as:

"* * * [A] pathologic condition, affecting chiefly the nervous and gastroenteric systems, caused by the habitual use of alcoholic beverages in poisonous amount."

It is true that recognition of the fact that a person is intoxicated requires no peculiar scientific knowledge, *Guedon v. Rooney,* 160 Or 621, 87 P2d 209, 120 ALR 1298 (1939), but with regard to the diagnosis, causes and effects of disease and other matters of medical science, skill and practice, opinions of lay or nonexpert witnesses are not competent evidence. 31 Am Jur2d, Expert and Opinion Evidence 616, § 95. The Wisconsin Supreme Court in *State v. Freiberg,* 35 Wis2d 480, 151 NW2d 1, 3 (1967), stated:

"* * * [I]t is generally now believed by the medical profession that alcoholism is a disease. This, however, is a matter of expert medical opinion that should be proved by a physician and not by a layman * * *."

■ We need not here decide whether such evidence is always required. In this case, the failure of the petitioners to present medical testimony or hospital records to support their contention of alcoholism precludes us from making the factual finding that respondent is a chronic alcoholic. Nor has our review of

the record indicated any evidence to support a finding that the presumption of competency has been overcome. Respondent clearly has a problem with alcohol —indeed, the record indicates that there was evidence available which might well have demonstrated that Mrs. Van is, in fact, a chronic alcoholic. Assuming, *arguendo,* that the record supports a finding of chronic alcoholism, it does not support a finding of incompetence. While experience indicates that chronic alcoholics as a group may be less likely to properly manage their own affairs than those who are not, it does not follow that every chronic alcoholic is per se incompetent. Each case must be individually evaluated to determine the effect this disease has on the victim's abilities. In the case at bar, there is no evidence that the overindulgence, even if it does amount to chronic alcoholism, so significantly interferes with Mrs. Van's ability to manage her property or take care of herself as to justify the appointment of a guardian.

If there is any substantial evidence that Mrs. Van is squandering her assets it was not made a part of the record. No evidence was offered as to the amount of assets she had at the time of her first husband's death, or what assets she received from other sources thereafter. In substance, the record shows that over a period of 21 years she voluntarily placed approximately $130,000 with a bank for management, and that although she had received the income therefrom for living expenses and on a couple of occasions had drawn out part of the principal, the value of the account at the time of the hearing was approximately $200,000.

The Florida District Court of Appeals in *In Re McDonnell,* 266 So2d 87, 88 (DC Fla App 1972), re-

jecting a guardianship petition in a fact situation remarkably similar to the case at bar, noted that:

"* * * In our present day paternalistic society we must take care that in our zeal for protecting those who cannot protect themselves we do not unnecessarily deprive them of some rather precious individual rights."

We find on the facts as presented on the record before us that the appointment of a guardian of the person and estate of Mrs. Van would unnecessarily deprive her of her individual rights.

Reversed.